55

In re Sherman E. UNKEFER and Judy G. Unkefer, husband and wife, individually and doing business as Unkefer and Associates, an Arizona proprietorship, Debtors.

Claude PITRAT, Trustee, Plaintiff,

v.

Sherman E. UNKEFER, III, Judy G. Unkefer, Defendants.

No. B-83-367-PHX-RGM.
Adv. No. 84-75-RGM.

United States Bankruptcy Court,
D. Arizona.

Oct. 23, 1984.

J. Lawrence Dunlavey, Phoenix, Ariz., for trustee.

Roger R. Marce, Phoenix, Ariz., for Judy G. Unkefer.

Jim D. Smith, Yuma, Ariz., for Sherman E. Unkefer.

## MEMORANDUM OPINION AND ORDER DENYING JUDY UNKEFER'S MOTION FOR SUMMARY JUDGMENT RE: CLAIM OF $50,000 HOMESTEAD EXEMPTION

ROGER G. MOOREMAN, Bankruptcy Judge.

Sherman Unkefer, III and Judy Unkefer, husband and wife, were named as debtors in an involuntary Chapter 7 petition that was filed on February 7, 1983. These debtors subsequently dissolved their marriage, and now each has claimed a $50,000 homestead exemption pursuant to 11 U.S.C. § 522(b) and A.R.S. § 33–1101, *et seq.* The homestead property was sold in court, and in excess of $50,000 in equity above existing encumbrances was realized upon the sale. Pursuant to a stipulation among the Unkefers and the Trustee, the court authorized the distribution of $25,000 to each of the Unkefers from the sale proceeds.

Judy Unkefer has moved for summary judgment on the issue of her entitlement to an additional $25,000 distribution from the sale proceeds. In other words, she contends that she is entitled to exempt a $50,-000 homestead independently of the exemption claimed by her former husband. Both the Chapter 7 Trustee and creditor, Harry V. Eastlick, as Trustee of North American Coin & Currency, Ltd., No. B–82–2549–PHX–RGM, have opposed Judy Unkefer's motion.

Congress provided a schedule of exempt property available to debtors, but it also decided that the states could elect to define the exemptions themselves. 11 U.S.C. §§ 522(a), 522(b) and 522(d). Arizona has chosen to have state law determine the exemptions available to debtors. A.R.S. § 33–1133(B). Debtors may only take those exemptions that were available under state law on the date the petition in bankruptcy was filed. *In re Cameron*, 25 B.R. 119, 120 (Bankr.N.D.Ohio 1982).

At the time the petition in this case was filed, A.R.S. § 33–1101(C) stated that "[o]nly one homestead may be claimed by a married couple or a single person under the

provisions of this section."[1] Judy Unkefer contends that this attempt to allow different exemptions to single and married persons is preempted by 11 U.S.C. § 522(m), which states that "[t]his section [defining available exemptions] shall apply separately with respect to each debtor in a joint case."

 This court concludes that there is no conflict between the state and federal statutes and that, therefore, the Arizona homestead statute is not preempted by § 522(m). *See In re Goering,* 23 B.R. 1010, 1012–14 (Bankr.N.D.Ill.1982) (Preemption occurs only when construction of state and federal statutes establishes that they actually conflict.) The legislative history of § 522(m) does not suggest that the statute was intended to mandate that married and single individuals be treated identically under state exemption laws. *See In re Webb,* 29 B.R. 280, 282 n. 2 (Bankr.E.D.N.Y.1983). Section 522(m) is properly construed as simply requiring that each debtor in a joint case be allowed to exempt that property which an individual filing separately might exempt. *See In re Brooks,* 31 B.R. 302, 10 B.C.D. 1051 (Bankr.S.D.N.Y.1983).

In Arizona, if only one spouse files a bankruptcy petition, that spouse may claim the full exemption allowed to a married person under state law. If both spouses file, either separately or jointly, they may each claim the full exemption allowed to a married person, but married people are only entitled to exempt a total of $50,000 in equity between them. Section 522(m) does not require a different result. 31 B.R. at 305 and n. 1.

 Unkefer argues that the Arizona homestead law violates the Equal Protection Clause of the fourteenth amendment to the United States Constitution. She contends that there is no rational basis for the disparity in the way the statute treats married and single persons.

The Arizona homestead law does not deny equal protection so long as "there is some ground of difference that rationally explains the different treatment accorded married and unmarried persons...." *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972). A similar "reasonable basis" test has been articulated for judging whether or not a state's social and economic regulations violate the Equal Protection Clause. *See Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491.

This court finds that there is a rational basis underlying the Arizona legislature's decision to allow different exemptions to single and married persons. In *Matcha v. Winn,* 131 Ariz. 115, 638 P.2d 1361, 1363 (Ct.App.1981), the court stated that "the fundamental purpose of the homestead law is to protect the family against the forced sale of home property from certain creditors ...." In *McLaws v. Kruger,* 130 Ariz. 317, 636 P.2d 95 (1981) (In Division), the Arizona Supreme Court held that a debtor is not entitled to exempt the cash proceeds of his own *voluntary sale* of the homestead property. This is further evidence that the homestead exemption is directed primarily at helping the debtor keep his home.

It may reasonably be expected that married persons will share the same residence and that single persons will each desire a separate residence. Thus, it was not unreasonable for the Arizona legislature to allow married individuals a smaller per person exemption than single individuals. That the effective per person exemption for married individuals is less than that allowed single individuals does not deprive the state exemption scheme of its rational basis that the amount that is available is the same *per residence.*

The state exemption scheme does not achieve its purpose in a perfect way. When the debtors filed their petition, for example, the exemption statute in effect

---

**1.** 1982 Ariz. Sess. Laws, Ch. 123, § 1 (attached). This limitation is now contained in A.R.S. § 33–1101(B).

expressly allowed debtors to exempt "[l]and in a compact body which the claimant designates." [2] Thus, a debtor could claim an exemption in property on which he did not reside. In 1983, the statute was redesigned so that now a debtor must reside on homestead property. A.R.S. § 33–1101(A).

In Unkefer's case, the statute does not appear to achieve its objective because she and her former husband no longer share the same dwelling. She does not receive the full benefit the statute intended to confer on married persons, nor does she receive the full benefit afforded single persons. Nevertheless, the homestead exemption does not deny equal protection "merely because the classifications made ... are imperfect." *Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. at 1161).

Unkefer raises one additional preemption argument in support of her motion for summary judgment. She contends that the Arizona homestead statute is preempted by the Equal Credit Opportunity Act, 15 U.S.C. § 1601 *et seq.* She states that the Act was designed to prevent discrimination in the availability of credit based upon marital status and that the Arizona homestead statute causes such discrimination. *See* 15 U.S.C. § 1691(a)(1).

■ First, this court finds that Unkefer lacks standing to make this argument. She has alleged no injury to herself, as it concerns her attempts to obtain credit, that this court should attempt to redress by overturning the Arizona homestead law. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 48 L.Ed.2d 450, 96 S.Ct. 1917 (1976).

■ Second, this court is not persuaded that the Arizona homestead statute actually conflicts with the Equal Credit Opportunity Act. As previously noted, either a single or a married person is entitled to claim the full $50,000 homestead exemption when filing a bankruptcy petition. In oth-er words, whether the person applying for credit is either single or married, the lending creditor can expect to be able to reach all of the borrower's equity in the property except $50,000. Thus, the court discerns no per se conflict in the statutes, and nothing in the record before the court suggests that the homestead law is discriminatory in its effect upon the availability of credit.

Third, there is no direct evidence of a congressional intent to override state exemption laws to effectuate the purposes of the Equal Credit Opportunity Act. The Trustee notes the following statement of the United States Supreme Court from *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979):

> On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted ... A mere conflict in words is not sufficient. State family and family property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overriden ....

The court finds that this case does not strictly involve issues of family law. The interrelationship with family law is close enough, however, to require a clearer statement of intent before inferring that preemption was intended. Requiring that such intent need be manifest more directly seems reasonable in light of the congressional decision to allow states to define the controlling scheme of bankruptcy exemptions. 11 U.S.C. § 522.

Judy Unkefer and her former husband may, therefore, only exempt a total of $50,000 in homestead equity. As noted, they stipulated with the Trustee concerning the distribution of this sum, and they are not entitled to any further distributions.

Based upon the foregoing opinion,

---

**2.** A.R.S. § 33–1101(A)(2) prior to the 1983 amendments. See 1982 Ariz. Sess. Laws, Ch. 123, § 1 (attached).

IT IS ORDERED that Judy Unkefer's motion for summary judgment to the effect that she is entitled to claim a $50,000 homestead exemption totally independent of that claimed by her former husband and that she is entitled to receive an additional $25,000 distribution from the equity in the homestead property is hereby denied.

## APPENDIX

### HOMESTEAD—MOBILE HOMES

### CHAPTER 123

### HOUSE BILL 2394

**An Act relating to property; prescribing value of homestead which is exempt from attachment, execution and forced sale, and amending section 33–1101, Arizona Revised Statutes.**

*Be it enacted by the Legislature of the State of Arizona:*

Section 1. Section 33–1101, Arizona Revised Statutes, is amended to read:

§ 33–1101. **Homestead defined; homestead exemptions; persons entitled to hold homesteads**

A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding ~~twenty~~ fifty thousand dollars in value, any one of the following:

1. Real property in one compact body upon which exists a dwelling house in which the claimant resides.

2. Land in a compact body which the claimant designates.

B. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, ~~not exceeding ten thousand dollars in value, any of the following:~~

~~1. A mobile home in which the claimant resides.~~ any of the following:

1. A mobile home in which the claimant resides, not exceeding twenty-five thousand dollars in value.

2. A mobile home in which the claimant resides plus the land upon which that mobile home is located at the time of filing, not exceeding thirty-five thousand dollars in total value for both the mobile home and the land.

C. Only one homestead may be claimed by a married couple or a single person under the provisions of this section. The value as specified in this section refers to the equity of a single person or married couple claiming the homestead.

**Sec. 2. Emergency**

To preserve the public peace, health and safety it is necessary that this act become immediately operative. It is therefore declared to be an emergency measure, to take effect as provided by law.

Approved by the Governor, April 14, 1982.

Filed in the Office of the Secretary of State, April 14, 1982.