**In re Glenn H. GOERING, Harry A. Goering and Eleanor Goering and Glenn H. Goering and Harry A. Goering, d/b/a Glenn H. and Harry A. Goering (A partnership), Debtors.**

**Bankruptcy Nos. 81 B 8719, 81 B 8720 and 81 B 8721.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 9, 1982.

Bryan Krakauer, Carol Anne Been, Law Clerk, Sidley & Austin, Chicago, Ill., for Union Nat. Bank of McComb.

Charles J. Myler, John S. Noble, John J. Wyeth, Law Clerk, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for debtors.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This cause came to be heard on the debtors' challenge to the former Illinois Homestead Exemption Statute. The court being fully advised in the premises and having carefully considered the memoranda filed by the parties hereby finds the former exemptions constitutionally sound and denies debtors' request to be allowed the Federal Homestead exemptions as defined in 11 U.S.C. Sec. 522(d).

Debtors contend that the Illinois Homestead Exemption in effect on July 21, 1981 (52 Ill.Rev.Stat. Sec. 1) when they filed their bankruptcy petition is unconstitutional in that it effectively denies Mrs. Goering any homestead exemption. Debtors argue that said statute is directly in conflict with federal bankruptcy law and thus unconstitutional under the Supremacy Clause, and also violative of the Equal Protection Clause in that it discriminates against the class "spouses." Union National Bank of MaComb (Bank), a substantial creditor of the debtors, argues that the former Illinois Homestead exemption is not violative of any constitutional provision.

## FINDINGS OF FACT

Harry Goering and Eleanor Goering as joint debtors (along with Glenn Goering and the partnership of Glenn Goering and Harry Goering) filed their consolidated Chapter 11 bankruptcy proceedings on July 21, 1981. Pursuant to 11 U.S.C. Sec. 522(b) Illinois has opted out of the Federal Exemption Statute. Therefore, on the day of filing debtors were entitled to the Illinois Homestead exemption, which read in relevant part as follows:

Section 1—Every householder having a family shall be entitled to an estate of homestead to the extent in value of $10,-000, in the farm or lot of land and buildings thereon owned or rightly possessed by lease or otherwise and occupied by him or her as a residence... (52 Ill.Rev.Stat. Sec. 1).

The Federal Homestead exemption in effect at the time of filing and still in effect today reads as follows:

(d) the following property may be exempted under subsection (b)(1) of this section:

(1) the debtors' aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...

(m) this section shall apply separately with respect to each debtor in a joint case. (11 U.S.C. Sec. 522).

On January 1, 1982 Chapter 52, Sec. 1 of the Illinois Revised Statutes was amended to resemble 11 U.S.C. Sec. 522 allowing a $7,500 homestead exemption for every individual debtor.

## ISSUES

It is significant to note that debtor is not challenging the constitutionality of Sec. 522(b) of the Bankruptcy Code permitting states to "opt-out" of the Federal Exemption Scheme. Instead, debtor specifically challenges the constitutionality of former Section 1 of Chapter 52 of the Illinois Revised Statutes, the Illinois Homestead Exemption Statute itself. The basic issues are: 1) whether or not the Illinois Homestead Exemption in effect on July 21, 1981 is in conflict with Federal Bankruptcy Law and thus unconstitutional under the Supremacy Clause; 2) whether the Illinois Homestead Exemption is violative of the Equal Protection Clause in that it discriminates against the class "spouses."

## DISCUSSION

### INTRODUCTION

Section 522(b)(1) of the Bankruptcy Code permits a state to "opt-out" of the scheme of Federal Exemptions enumerated in Sec. 522(d) prohibiting Illinois residents from claiming the schedule of exemptions provided in Section 522(d). The Act took effect

on January 1, 1981 and at that time the Illinois Exemption Act provided for a Homestead Exemption entitling "every householder having a family ... to the extent in value of $10,000 ... if occupied by him or her as a residence." Ill.Rev.Stat. Ch. 52 Sec. 1 (1979).

In the recent case of *In the Matter of Sullivan,* 6 C.B.C. 972, 680 F.2d 1131 (1982) the Court of Appeals for the Seventh Circuit made it clear that 522(b)(1) is not an unconstitutional delegation of federal power to the states and not in conflict with Article I, Sec. 8, Clause 4 of the United States Constitution which provides that Congress may establish "uniform laws on the subject of bankruptcies." Although the issue in *Sullivan* was the constitutionality of Sec. 522(b)(1) it is the leading case in the 7th Circuit on Sec. 522 in general. During the one year period in which Chapter 52, Section 1 of the Illinois Revised Statutes read as above, and applied to the Bankruptcy Code through Section 522(b)(1), there were no constitutional challenges similar to that raised by the debtors herein. Therefore, this court will look to *Sullivan* for initial guidance and attempt to apply the principles of that decision.

The *Sullivan* court pointed out that there is indeed a marked contrast between the property which a debtor is permitted to declare exempt under the Illinois and Federal exemption schemes. However, the court held that the Constitution in requiring uniform bankruptcy laws does not require identical provisions in each of the fifty states. Instead, citing *Hanover National Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) and other Supreme Court cases the *Sullivan* court affirmed that only geographic uniformity and not personal uniformity is required. Thus, the question to be resolved here is whether an impermissible conflict exists between the state exemption laws and Section 522(d) which would demand that Federal Law preempt the state exemptions.

The Sullivan court in analyzing Sec. 522(d) found it valuable to explore the legislative history of the section. The bill introduced in the Senate from which Sec. 522(d) evolved proposed allowing state law to govern exemptions as it had under the 1898 Act. In contrast, the House bill proposed allowing a bankrupt debtor to choose between state exemptions and enumerated federal exemptions. The opt-out provision Sec. 522(b)(1) for which there is virtually no legislative history was added to Sec. 522 as a compromise provision. History reveals that the intention of providing debtors with a "fresh start" through a federal exemption scheme can be attributed only to the House. It was clearly the Senate's intention to allow states to determine whatever exemptions would be appropriate. U.S.Code Cong. & Ad.News, 5787, 5792, 5963, 6087–88.

Therefore, in examining the Illinois exemption scheme that was in effect when debtors filed their petition, it must be kept in mind that the Senate and House had no clear intentions in passing Sec. 522. Instead, the House and Senate had very different views on the exemption scheme and passed what is a product of compromise. The *Sullivan* court in examining the Illinois and federal exemption schemes held that state exemption provisions protecting less assets of debtors than the federal exemptions of Section 522(d) are not necessarily in "conflict" with either the language of the Code or expressions of Congressional intent underlying it. The *Sullivan* court concluded that if Congress has the power to permit states to set their own exemption levels (which they did find existed) then the Illinois provisions are constitutional.

Given the *Sullivan* case it is time to turn to an examination of debtors' contentions. Debtors claim that the Illinois homestead exemption is directly in conflict with federal bankruptcy legislation and thus unconstitutional under the Supremacy Clause. Second, debtors contend that the Illinois exemption is violative of the Equal Protection Clause in that it discriminates against the class "spouses."

### 1. The Supremacy Clause

The leading case on Supremacy Clause questions of the kind at issue here is the

case of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In *Perez* the controversy involved an alleged conflict between the Bankruptcy Act and an Arizona Motor Vehicle Safety Act. In determining whether the challenged state statute was unconstitutional, the *Perez* court pointed out that what must be examined is whether the state statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). The *Perez* court outlined a two step process for making this determination:

1. Ascertain the construction of the two statutes.

2. Determine the constitutional question of whether they are in conflict.

■ In ascertaining the construction of the two statutes it must be kept in mind that state laws will be suspended only to the extent of *actual conflict* with the system provided by Congress. *In re Vasko,* 6 B.R. 317, 3 C.B.C.2d 181 (Bkrtcy.N.D.Ohio 1980). Section 522(b) expressly grants broad discretion to the states and an openended opportunity to determine what property may be exempt as long as the state law does not conflict with property exempt under federal law other than the exemption list of 522(d). The section does not mandate that debtors be guaranteed a right to exempt particular types of property. The unambiguous language of Sec. 522(b) implicitly indicates a state may exempt the same property included in 522(d), more property than that included in 522(d), or less property than that. In fact, states may also prescribe their own requirements for exemptions which may either circumscribe or enlarge the list of exempt property. *Matter of McManus,* 6 C.B.C. 1194, 681 F.2d 353 (C.A.5, 1982).

Beyond a reading of the actual language of Sec. 522 it is difficult to analyze the statute's construction. As pointed out above, the Senate and the House had distinctly different views on the subject of exemptions and the statute with its "opt-out" provision is the product of compromise between the two houses. Courts have held, however, that Congress enacted Sec. 522 because they found that leaving the exemptions wholly to the states created great disparity in treatment of debtors and that many state statutes did not leave debtors sufficient property to begin their economic lives anew. Section 522, it has been held, thus balances the federal interest in insuring a fresh start with the state's interest in regulating credit within their own borders and creating a scheme that recognizes the variance in local circumstances. *Matter of Smith,* 640 F.2d 888 (C.A.7 1981); *In re Baglemann,* 16 B.R. 780 (Bkrtcy.N.D.Ill. 1982); *Matter of Cannady,* 653 F.2d 210 (C.A.5, 1981).

While the legislative history of Sec. 522 does not seem to support the way courts have construed Sec. 522's evolution, both should be kept in mind in examining the construction of the Illinois exemption statute. Section 522(b)(2)(A) was enacted to give states leeway in fashioning their own exemptions to fit the particular needs of their residents and recognizes the state's interest in regulating credit within the state. *In re Baglemann,* 16 B.R. 780 (Bkrtcy.N.D.Ill.1982). The Illinois Exemption Act was passed initially in the late nineteenth century and except for amendments as to amounts the statute had remained virtually unchanged until January of this year. The general purpose and policy of the homestead exemption was to protect the householder and his family from the misfortunes of life and to provide them with a home to the extent of the exemption amount. *In re Hendricks,* 300 F.Supp. 774 (S.D.Ill.1969). Considerable emphasis was placed on the concept of the word "householder" in the statute reflecting the policy of the law which was to preserve the homestead for the benefit of the family as well as the householder himself. *McGee v. McGee,* 91 Ill. 548 (1879); *Brod v. Brod,* 390 Ill. 312, 61 N.E.2d 675 (1946). The statute was designed and adopted out of concern for the public welfare.

■ Debtor seems to argue that the Illinois homestead exemption is in direct con-

**1014**

flict with Sec. 522(m) of the Bankruptcy Code in that it fails to provide a homestead exemption for both the husband and wife debtors. However, as pointed out previously, Sec. 522 gave the state courts the right to pass their own exemption scheme without a requirement that such scheme follow in principle the policy outlined in Sec. 522. Only if there is *actual conflict* with the system provided by Congress must the state law be suspended. This court does not view the state scheme which was established to preserve the homestead for the benefit of the householder and his or her family as in conflict with the system provided by Congress.

Before discussing debtor's equal protection argument, a few words must be said about the case of *Cheeseman v. Nachman,* 656 F.2d 60, 4 C.B.C.2d 1218 (C.A.4, 1981). Debtors rely heavily on *Cheeseman* for the proposition that the Illinois exemption scheme allowing a homestead exemption only to a householder is unconstitutional. *Cheeseman* did involve a very similar situation to the one at issue here. However, while the court did strike down the Virginia homestead exemption, the case can be factually distinguished on two grounds. First of all, the Virginia exemption entitling every "householder" or "head of family" an exemption was found to be extremely ambiguous. Secondly, the 4th Circuit in making its ruling relied on the Virginia policy of liberally construing the exemption provisions. Neither of these two factors are present in construing the Illinois exemption and this court does not follow the *Cheeseman* court. Furthermore, even though the *Sullivan* court in dicta mentioned *Cheeseman,* it did not do so in a context which would lead this court to believe that we are to follow *Cheeseman* on the issue of the constitutionality of the *Illinois* exemptions.

### 2. Equal Protection

■ Debtors second argument for the unconstitutionality of the Illinois Homestead exemption applicable on July 21, 1981 is that it violates debtor's rights to equal protection by discriminating against the class "spouses". Under traditional equal protection analysis, a legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). While the rational basis test articulated in *Frontiero* has been challenged and in some instances modified, the ultimate question remains whether the classification of householders has some reasonable basis. The fact that a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy. *Allied Stores of Ohio, Inc. v. Bowers Tax Commissioner,* 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

■ The U.S. Supreme Court has historically exercised restraint in reviewing state legislation creating reasonable classifications of individuals in order to promote legitimate state interests. Thus, as a general rule where a state legislates within areas of its competence, where its legislation is non-discriminatory on its face and as applied, and where its legislation does not impinge upon the federal constitutional rights of any citizens, any classification created by the legislature survives scrutiny under the Equal Protection Clause so long as the classification is rationally related to promoting a legitimate state interest and is reasonable. *Howe v. Brown,* 319 F.Supp. 862 (N.D.Ohio, 1970); *Matter of Bloom,* 5 B.R. 451, 6 B.C.D. 2 C.B.C.2d 838 (Bkrtcy.N. D.Ohio 1980).

■ Certainly the purpose of preserving the homestead for the benefit of the householder and his or her family is a legitimate state interest and requiring that debtors be "householders" to obtain that exemption is rationally related to such a purpose. In fact, in the recent case of *In re Kelly,* 6 C.B.C.2d 1078, 21 B.R. 375 (Bkrtcy.M.D.Fla., 1982), where Florida had a similar statute to the Illinois Statute in question here and where legislative history revealed that the statute was passed for basically the same reasons, the court held:

Essentially the homestead law seeks to safeguard the family from absolute destitution which could occur if the family home were sold to satisfy the debts of the owner and head of family. The designation of the heads of families as the class which may avail itself of the homestead exemptions goes directly to the very objective of the law, and cannot be said to be unreasonable or arbitrary.

While *Kelly* may be distinguished on facts, its rationale regarding state exemption policy is pursuasive in examining the Illinois situation.

### CONCLUSIONS

The Illinois Homestead Exemption Act applicable on July 21, 1981 is not in conflict with Federal Bankruptcy Law and not unconstitutional under the Supremacy Clause. While the Illinois exemption scheme is significantly different from that outlined in Sec. 522 of the Bankruptcy Code, it does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Bankruptcy Code.

Secondly, the Illinois Homestead Exemption applicable to debtors is not violative of debtors' equal protection by discriminating against the class "spouses". A statute which has as its purpose preserving the homestead for the benefit of the householder and his or her family is a legitimate state interest. The designation of "householders" as the class which may avail itself of this homestead exemption goes directly to the very objective of the law and cannot be said to be unreasonable or arbitrary.

WHEREFORE, IT IS HEREBY ORDERED that debtors request to be allowed to use the Federal Homestead Exemption as defined in 11 U.S.C. Sec. 522(d) is denied.