LOUIS WRIGHT, Plaintiff-Appellant, v. CHICAGO MUNICIPAL EMPLOYEES' CREDIT UNION *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—4436

Opinion filed August 19, 1994.

Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, and Michelle A. Weinberg, all of Edelman & Combs, and Peter Francis Geraci, both of Chicago, for appellant.

Michele Odorizzi, Michael J. Gill, and Suzanne Rubens Kater, all of Mayer, Brown & Platt, of Chicago, for appellee Chicago Municipal Employees' Credit Union.

Frederick P. Heiss and William A. Marovitz, both of Chicago, for appellee City of Chicago Municipal Employees' Annuity and Benefit Fund.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Louis Wright, appeals from an order granting summary judgment in favor of the defendants, Chicago Municipal Employees' Credit Union (Union), the City of Chicago Municipal Employees' Annuity and Benefit Fund (Fund) and trustees of the Fund. The case involves only questions of law: the interpretation of a statute and the effect of a judgment in the Federal district court.

The plaintiff borrowed $2,305.16 from the Union on October 5,

1987, and executed a power of attorney permitting the Union to collect any balance due on the loan from any amounts to be refunded to the plaintiff at the time of his separation from service as a municipal employee; the amount to be refunded consisted of contributions the plaintiff had made to the Fund. The plaintiff left city employment sometime in June 1990. On June 28, 1990, at the request of the Union, the Fund deducted $2,305.16 from the plaintiff's account in the Fund and paid it to the Union.

In 1992, the plaintiff filed a complaint individually and as a member of a class alleging that the actions of the Fund and the Union were contrary to section 8—244 of the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 8—244). The plaintiff later argued in his motion for summary judgment that the defendants were collaterally estopped from deducting from the amount of his refund because the same issue, that is, the interpretation of section 8—244, had been adjudicated against the Fund in a bankruptcy case in the Federal district court in the Northern District of Illinois. *In re Davis* (N.D. Ill. 1988), 86 Bankr. 556.

The trial judge denied the plaintiff's motion for summary judgment and granted the defendants' motion for summary judgment. He held that the Federal district court's decision in *Davis* did not collaterally estop the Fund, and he interpreted section 8—244 to permit the plaintiff to grant power of attorney to the Fund to pay the Union from the amount due him as a refund of contributions.

We will first address the question of collateral estoppel. James Davis was employed by the City of Chicago and was a member of the Fund. In 1984 he assigned to the Union, in consideration for a loan, any refund of his contributions to the Fund which would become payable to him upon his termination of employment with the City. He filed a petition for bankruptcy and filed a complaint to determine the validity of the Union's lien. The bankruptcy judge construed the applicable Illinois statute and held that the Pension Code did not prohibit assignment of refunds but applied only to annuities or disability benefits.

On review the district judge construed the same statute that is in issue before us, section 8—244 of the Illinois Pension Code, which then provided as follows:

> "All annuities, pensions, and disability benefits granted under this Article, shall be exempt from attachment or garnishment process and shall not be seized, taken, subjected to, detained, or levied upon by virtue of any judgment, or any process or proceeding whatsoever issued out of or by any court in this State, for the payment and satisfaction in whole or in part of any debt,

damage, claim, demand, or judgment against any annuitant, pensioner, or other beneficiary hereunder.

No annuitant, pensioner, or other beneficiary shall have any right to transfer or assign his annuity or disability benefit or any part thereof by way of mortgage or otherwise ***." (Ill. Rev. Stat. 1985, ch. 108$^{1}$/$_{2}$, par. 8—244.)

The district judge disagreed with the bankruptcy judge and construed the language of the statute to be a prohibition of the assignment of refunds. *Davis*, 86 Bankr. at 559.

The plaintiff in this case now contends that that holding of the district judge bars the Union and the Fund from claiming that the Fund properly paid the amount of the plaintiff's loan to the Union.

The parties have submitted comprehensive arguments on the question of whether the judgment of the Federal district court, in which the plaintiff in this case was not a party but the Fund was a party, collaterally estopped the Fund from relitigating the interpretation of section 8—244. For example, the parties raise the question of whether the Federal law or State law of collateral estoppel applies; whether an "intervening legal development" vitiating the Federal court's decision arose when the Illinois legislature amended section 8—244 after the *Davis* decision; and whether basic "principles of fairness" prevent application of collateral estoppel in this case. We have determined that we need not discuss all of the arguments advanced by the parties because we conclude that under either Federal or State law, collateral estoppel does not apply in this case. We note parenthetically that in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1994), 159 Ill. 2d 137, which involved a claim that a Federal district court adjudication collaterally estopped a party from litigating a claim in the Illinois courts, the Illinois Supreme Court decided the question without reference to Federal law of collateral estoppel.

The plaintiff's argument is that whether collateral estoppel applies in this case is to be determined by Federal, rather than Illinois, law and that under Federal law collateral estoppel "is applicable to questions of law as well as fact." We will consider only the second part of the plaintiff's argument, that is, that Federal law bars a subsequent action if a question of law was decided in the first action. In support of his argument the plaintiff cites *United States v. Stauffer Chemical Co.* (1984), 464 U.S. 165, 78 L. Ed. 2d 388, 104 S. Ct. 575. In that case the Environmental Protection Agency (EPA) was involved with the defendant, a chemical plant, in the Federal district court in Wyoming. The defendant had refused to permit private contractors hired by the EPA to inspect the defendant's plant

unless certain agreements were made. The defendants contended that the private contractors were not "authorized representatives" of the EPA as that term was used in the applicable statute. The district court in Wyoming agreed with the defendant, and the United States Court of Appeals for the Tenth Circuit affirmed the district court.

Later, the EPA sought to inspect the defendant's plant in Tennessee, again with private contractors, but not the same contractors. Again the defendant refused unless certain conditions were met and again litigation ensued, this time in the Federal district court in Tennessee. The district court held that the private contractors were "authorized representatives," contrary to the holding of the district court in Wyoming and the Tenth Circuit Court of Appeals. The Sixth Circuit reversed the district court in Tennessee and held that the EPA was collaterally estopped from litigating the question of whether private contractors were "authorized representatives" of the EPA. The Supreme Court affirmed the Sixth Circuit and held that "mutual defensive collateral estoppel is applicable against the Government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *Stauffer*, 464 U.S. at 169, 78 L. Ed. 2d at 392, 104 S. Ct. at 578.

●1 Before we discuss the applicability of *Stauffer*, it is necessary to define the term "defensive collateral estoppel." The Supreme Court explained the difference between offensive and defensive collateral estoppel:

> "[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." (*Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326 n.4, 58 L. Ed. 2d 552, 559 n.4, 99 S. Ct. 645, 649 n.4.)

It is clear to us that the plaintiff seeks to apply the *Davis* decision offensively, not defensively; it is also clear to us that there is no mutuality of parties since the plaintiff was not a party in *Davis*. We agree with the plaintiff that Federal law does not *require* mutuality for the application of collateral estoppel; but the absence of mutuality obviously diminishes the applicability of *Stauffer*. Most important, the Supreme Court said that the Sixth Circuit's decision prevented EPA from litigating that issue with the defendant, "but it still leaves EPA free to litigate the same issue in the future with other litigants." (*Stauffer*, 464 U.S. at 173, 78 L. Ed. 2d at 395, 104 S. Ct. at 580.) It is inescapable to us that that language of *Stauffer* is fatal to the plaintiff's position.

●2 In *United States v. Moser* (1924), 266 U.S. 236, 242, 69 L. Ed. 262, 264, 45 S. Ct. 66, 67, the Supreme Court said that estoppel "does not apply to unmixed questions of law." The Supreme Court reaffirmed that language in *Montana v. United States* (1979), 440 U.S. 147, 59 L. Ed. 2d 210, 99 S. Ct. 970, which was another case involving defensive use of collateral estoppel against the government by a party to the prior action. Contrary to the plaintiff's argument, *Stauffer* did not repudiate the expressions of the Supreme Court in *Moser* or *Montana*. In sum, we reject any claim that *Stauffer* represents the view that a party may be collaterally estopped in a previous action which decided only unmixed questions of law. Although the point was not raised in *Stauffer*, we conclude that it may be fairly argued that whether a person is an "authorized representative" is a question of ultimate fact; it surely is not an unmixed question of law. The issue before us, therefore, is whether the district judge decided an unmixed question of law in *Davis* when he construed section 8—244.

We emphasize that the district judge in *Davis* was interpreting Illinois law in the construction of an Illinois statute. The construction of a statute or an ordinance is a question of law. (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 262 N.E.2d 450; *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 377 N.E.2d 1208.) In *Cannon*, the appellate court declined to apply collateral estoppel to preclude the relitigation of the interpretation of an ordinance. The court said that collateral estoppel may be used only to preclude the relitigation of facts and that the construction of a statute, ordinance or constitutional provision is a question of law. (See also *Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 445 N.E.2d 374 (appellate court rejected defendant's argument that an interpretation of a statute by one judge collaterally estopped another judge from construing the same statute).) We conclude that the district judge decided an unmixed question of law in *Davis* and that the Cook County circuit court and this court are not collaterally estopped from making an independent construction of section 8—244.

Before discussing the merits of the question of interpretation of section 8—244, it is helpful to review the makeup and history of the Union and the legislative history of section 8—244. The Union is a nonprofit association owned by its members and is organized under the Illinois Credit Union Act. (Ill. Rev. Stat. 1991, ch. 17, par. 4401.) Initially its membership was restricted to certain employees of the City of Chicago and the Board of Education. In order to be a member of the Union it was required that the member be a participant in the Municipal Employees' Annuity and Benefit Fund of Chicago, which

was created pursuant to the Illinois Pension Code. (Ill. Rev. Stat. 1921, ch. 24, par. 1044 *et seq.*) Since at least 1953 the Union required members who received loans to sign a power of attorney directing the Fund to pay any refund of pension contributions due the Union on termination of employment. For several years the Fund routinely paid refunds to the Union when an employee who terminated his employment with the city had an outstanding balance on a Union loan.

In the middle or late 1970's, some other employees of the City of Chicago and the Chicago Board of Education, who were participants in the Laborers and Retirement Board Employees' Annuity and Benefit Fund (Ill. Rev. Stat. 1975, ch. 108¹/₂, par. 11—101 *et seq.*) (the Laborers' Fund), were added to the Union system. At that time, section 11—223 of the Pension Code expressly prohibited any assignment of refunds to members of the Laborers' Fund. Before members of the Laborers' Fund were allowed to participate in the Union, the Union insisted that section 11—223 be changed so that refunds of contributions could be assigned. Effective September 1, 1978, section 11—223 was amended and provided in part as follows:

> "No annuitant, refund applicant, or other beneficiary may transfer or assign his annuity, refund, or disability benefit or any part thereof by way of mortgage of otherwise, \*\*\* except in the case of refunds, when a participant has pledged by assignment power of attorney, or otherwise, as security for a loan from a legally operating credit union making loans only to participants in certain public employee pension funds described in the Illinois Pension Code, all or part of any refund which may become payable to him in the event of his separation from service." (Ill. Rev. Stat. 1979, ch. 108¹/₂, par. 11—223.)

The Union continued to require power of attorney for a refund as a condition for a loan.

In May 1988, the district judge decided *Davis*. On April 6, 1990, a bill was introduced in the Illinois Senate proposing an amendment to section 8—244. That bill passed both houses of the legislature on January 8, 1991, effective January 14, 1991. The language of the second paragraph of section 8—244 is almost identical to section 11—223 of the Pension Code covering the Laborers' Fund.

The plaintiff has adopted the position taken by the district judge in *Davis*, who held that the statute barred assignment of "an annuity or disability benefit, or any part thereof" and that the refund of contributions is a " 'part' of the \*\*\* benefit to be received by the employee." (*Davis*, 86 Bankr. at 558.) The plaintiff also relies on the reasoning of the district judge, who referred to several other sections of

the Pension Fund, which expressly barred assignments of refunds by other public employees, *e.g.*, firefighters and policemen. We must express respectful disagreement with the district judge.

We do not agree that the phrase, "or any part thereof," includes refunds. We believe that the phrase modifies "annuity" and "disability benefit," which are separate and distinct from refunds. The absence of the word "refund" from that part of section 8—244 which barred the right to assign an "annuity or disability benefit" was not inadvertent because the word "refund" is used later in section 8—244, which grants the Fund the right to pay to the "wife of any annuitant, pensioner, refund applicant, or disability beneficiary, such an amount out of her husband's annuity pension, refund, or disability benefit as any court of competent jurisdiction may order." (Ill. Rev. Stat. 1989, ch. 108¹/₂, par. 8—244.) We note that the district judge inadvertently included section 11—223 as one of the statutes which barred assignments of refunds. As noted, that section was amended in 1978 to permit assignments of refunds under certain circumstances.

Contrary to the view of the district judge, what he saw as a weakness in the Fund's position, we see as a strength. He concluded that because the legislature expressly barred assignment of refunds in some statutes, it must necessarily have intended to bar assignment of refunds in all cases. We construe the legislature's exclusion of a provision barring assignment of refunds to have been a legislative decision made advisedly. (See *Illinois State Toll Highway Authority v. Karn* (1973), 9 Ill. App. 3d 784, 787-88, 293 N.E.2d 162 ("the use of certain words in one instance by the legislature, and different words in another, indicate that different results were intended").) In *Siciliano v. Village of Westchester Firefighters' Pension Fund* (1990), 202 Ill. App. 3d 964, 560 N.E.2d 885, the appellate court held that a widow's pension rights under article 4 of the Pension Code were not terminated upon remarriage but were suspended during the remarriage. The court noted that in articles 3, 5 and 6 of the Pension Code the legislature used language that clearly expressed its intention to terminate the surviving spouse's benefits upon remarriage. However, article 4 did not contain such specific language. The court stated, "If [the legislature] wanted to terminate the surviving spouse's pension rights in article 4, it could have employed similar language ***. The fact that section 4—114 does not contain such language of termination is not inadvertent." *Siciliano*, 202 Ill. App. 3d at 967.

The plaintiff advances another argument made by the district judge, that is, that it would be contrary to public policy to allow one group of employees the right to assign refunds "when the vast major-

ity of state and municipal workers cannot assign these rights." *Davis*, 82 Bankr. at 558.

In *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 367 N.E.2d 1325, a creditor sought to enforce a judgment against a fireman by garnishment proceedings and argued that the section of the pension fund statute which barred garnishment of firemen's wages was unconstitutional. The creditor argued that it was denied equal protection of the law because creditors of policemen were not barred from maintaining garnishment actions against policemen. The supreme court rejected that argument thus:

> "The mere fact that the legislature failed to exempt the pension fund for policemen for municipalities of 500,000 or less population from garnishment process does not require that we therefore invalidate the provision granting such immunity to 17 other separate pension funds. The equal protection clauses of the State and Federal constitutions do not prohibit the legislature from pursuing a reform 'one step at a time,' or from applying a remedy to one selected phase of a field while neglecting the others. [Citations.] As the United States Supreme Court has stated, 'a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.' [Citation.]" *Friedman & Rochester*, 67 Ill. 2d at 421-22.

●3 We believe the language of the supreme court in that case is a clear refutation of any argument that public policy is violated by the fact that refunds are subject to assignment by certain public employees but not all. We also add that the plaintiff's argument cuts both ways. If the plaintiff's argument is correct, persons within the Union's system covered by the Laborers' Fund may assign their rights to refunds, but all other persons in the Union's system may not. We do not believe that that was the legislative intent. The trial judge correctly construed section 8—244, even as it existed before the 1991 amendment, to permit assignments of refunds.

In view of our conclusion, it is not necessary that we discuss the effect of the 1991 amendment. For the sake of finality, however, we will do so. The general rule has been expressed thus: "Although an amendment generally is presumed to change the law, if an amendment to an ambiguous statute is enacted soon after there were controversies as to the interpretation of the statute it amends, the amendment may be construed as a legislative interpretation of the original statute." (*Santiago v. Kusper* (1990), 133 Ill. 2d 318, 329, 549 N.E.2d 1251.) A narrow reading of the rule as recited in *Santiago* could lead to the conclusion that the rule applies only to ambiguous

statutes. But the supreme court in *People v. Brooks* (1994), 158 Ill. 2d 260, 270, 633 N.E.2d 692, held that an amendment to a statute may be indicative of legislative intent even where a statute is not ambiguous. Similarly, we do not read the rule as recited in *Santiago* so narrowly to conclude that the lapse in time is the only factor to be considered. Of course, the shorter the period of time between the origin of the controversy and the legislative action, the stronger is the position of the party arguing that the amendment was a clarification. (*Cf. Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 594 N.E.2d 1243 (by introducing a bill less than four months after a judicial ruling, legislature moved "swiftly").) It is true that more than 22 months elapsed from the time of the *Davis* decision until the bill amending section 8—244 was introduced. But in *People v. Brooks* the legislature amended the statute effective January 1, 1994. The supreme court, in construing the legislative intent at the time the act was passed before the amendment, said that the statute was passed in answer to four cases; one of the cases was decided in 1993; two of the cases were decided in 1992; and one of the cases was decided in 1989. *Brooks*, 158 Ill. 2d at 264, 270.

It must be presumed that the legislature was aware of the *Davis* decision. (See *People v. Badoud* (1988), 122 Ill. 2d 50, 521 N.E.2d 884.) It is more reasonable to conclude that the amendment was not a "change" in the law because the amendatory language was specifically tailored for the narrow exception that is consistent with the facts in *Davis*. The amendment addressed only "refunds" and specifically mentions a "power of attorney" and a "legally operating credit union making loans only to participants in certain public employee pension funds." The legislature's "awareness" of *Davis* could not be more evident; this amendment clearly responded to the *Davis* decision.

It would be unrealistic to consider this question without also referring to the 1978 amendment to section 11—223 involving the Laborers' Fund which permitted the assignment of refunds as security for a loan from a legally operating credit union to participants in certain public employee pension funds. We agree with the defendant's contention that the 1978 amendment "demonstrates that the [legislature] knew and approved of the Credit Union's long-standing practice with respect to the" Fund. We also find persuasive the defendant's argument that the legislature did not amend section 8—244 to expressly permit the assignment of refunds because the legislature must have recognized that section 8—244 already permitted the assignment of refunds. As previously noted, we cannot accept the conclusion that the legislature intended in 1978 to permit

assignments of refunds to the same credit union by members of the Laborers' Fund, but not by members of the Municipal Employees' Fund.

Before leaving this point, we wish to make it clear that we have not considered the affidavits submitted by the defendants which purport to prove the legislative intent. We agree with the plaintiffs that they may not be considered for that purpose. We have, however, considered their factual assertions of the make up of the Union and its history.

For these reasons, we hold that the trial judge correctly determined that he was not collaterally estopped from rendering an independent interpretation of section 8—244 and that he was correct in his interpretation of section 8—244.

The judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.