119 F.3d 540
 38 Collier Bankr.Cas.2d 443, Bankr. L. Rep. P 77,446
In re Cynthia CLARK, Debtor-Appellee-Cross-Appellant,
v.
Appeal of CHICAGO MUNICIPAL EMPLOYEES CREDIT UNION,
Creditor-Appellant-Cross-Appellee.
 Nos. 96-1326, 96-1434 and 96-1662.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1996.
Decided July 11, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Sept.
24, 1997.*
 
 Michele Odorizzi (argued), Michael J. Gill, Julie L. Myers, Mayer, Brown & Platt, Lauren Newman, Robert J. Walinski, Walinski & Trunkett, South Division Credit Union, Chicago, IL, for Chicago Municipal Employees Credit Union.
 Jack McCullough, Office of the Trustee, Chicago, IL, pro se.
 David E. Linde (argued), Chicago, IL, for Debtor-Appellee.
 Before COFFEY, MANION, and EVANS, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Cynthia Clark filed a Chapter 13 Bankruptcy petition. The Chicago Municipal Employees Credit Union ("Credit Union") filed proof of a fully secured claim for $15,465.06, which represented the entire balance due on a car loan, signature loan, and revolving line of credit (Visa credit card) that Clark had entered into with the Credit Union. Each of these agreements was secured by a grant of a security interest in any rebate or refund which Clark might receive from her retirement fund. The bankruptcy court denied Clark's objection to the Credit Union's proof and found that the entire balance on all three agreements was secured. On appeal, the district court affirmed in part and reversed in part, finding that advances on a revolving line of credit could not be deemed a loan under 40 ILCS 5/8-244(2), the Illinois statute permitting Credit Union members to pledge municipal pension refunds payable upon separation from service as security for a loan. The Credit Union appeals arguing that the district court incorrectly determined that a revolving line of credit could not be considered a secured loan under Illinois law. Clark cross-appeals asserting that a credit union cannot encumber a member's pension refund because of the Bankruptcy Code's clear directive that a debtor must be left with enough post-petition property to ensure a "fresh start." We affirm.
 
 I. BACKGROUND
 
 2
 Cynthia Clark worked for the City of Chicago as a meter maid for 28 years. During this period of employment she became a member of the Chicago Municipal Employees Credit Union. Clark entered into three different loan agreements with the Credit Union. She received a cash advance on a signature loan, a financing agreement to buy a Buick LeSabre automobile, and a Visa credit card from the Credit Union. Each of these agreements were secured by a grant of a security interest in any rebate or refund which may become payable to Clark from her retirement fund. There were outstanding balances on all three agreements when Clark suffered a stroke that left her unable to continue her employment as a meter maid and resulted in a subsequent reduction of income. Following her stroke, she began to receive $920 per month from the city in the form of disability payments. On April 3, 1995, Clark filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code. The plan she proposed would have repaid 100% of the fair market value of her car, which was evaluated to be $9,392, to the Credit Union. However, her plan would have treated the remaining balances on her personal loan and on her revolving line of credit as unsecured debts that would have only been repaid at 10% of their value. On May 30, 1995, the Credit Union filed a proof of claim listing Clark's outstanding balances in the amount of $15,465.06 as debts secured by any refund Clark might receive from her pension upon her termination of employment with the city. Clark subsequently filed an objection to the Credit Union's proof of claim asserting that Illinois law, which allows a municipal credit union to encumber a person's pension refund, contravenes the congressional intent of enacting the Bankruptcy Code, which clearly directs that debtors who go through bankruptcy must be left with enough post-petition property to ensure a "fresh start." In re Szekely, 936 F.2d 897, 901 (7th Cir.1991); In re Smith, 848 F.2d 813, 817 (7th Cir.1988). She additionally argued that credit card debts are not within the scope of the Illinois statute at issue and, therefore, may not be secured by a person's pension fund.
 
 
 3
 On September 20, 1995, the bankruptcy court overruled Clark's objections to the Credit Union's proof of claim, thereby allowing the entirety of her outstanding balances to the Union to stand as secured debts. Clark appealed to the district court arguing that the Illinois statute allowing credit unions the power to encumber pension refunds of their members as security for loans violated the purpose of the federal Bankruptcy Code to allow debtors a "fresh start." She additionally argues that if the Credit Union was allowed to receive a security interest in loans, the amount of her outstanding debt to the Credit Union with respect to the line of credit on her Visa card could not be considered a "loan" under the Illinois statute.
 
 
 4
 The district court affirmed in part and reversed in part the decision of the bankruptcy court. The district court rejected Clark's general challenge to the enforceability of such pension refund encumbrances, but agreed that the Illinois statute did not permit a municipal credit union to place a lien on a refund on the basis of credit card debt. Both the Credit Union and Clark appealed the district court's ruling and these appeals have been consolidated for decision.
 
 
 5
 The Credit Union argues that the entirety of Clark's outstanding balances be considered secured debt, and that the district court's distinction between a "loan" and a "line of credit" is a misinterpretation of the relevant Illinois statute. Clark contends that her entire outstanding balance is unsecured because the Illinois statute allowing municipal credit unions to encumber the pension refunds of their members violates the federal Bankruptcy Code's requirement that debtors be left enough post-petition property to ensure a "fresh start."
 
 II. DISCUSSION
 
 6
 A. Municipal Credit Union's Security Interest in Member's Pension Refunds
 
 
 7
 Clark argues that a municipal credit union cannot encumber a member's pension refund due to the Bankruptcy Code's clear directive stating that a debtor must be left with enough post-petition property to ensure a "fresh start" after filing for bankruptcy. The district court determined that 40 ILCS 5/8-244 did not conflict with the Bankruptcy Code and that the Credit Union had enforceable liens on Clark's pension for the signature and car loans. Because the trial court's ruling was based solely on its interpretation of the law, we review its decision de novo. Triad Assoc. v. Robinson, 10 F.3d 492, 495 (7th Cir.1993); In re Yonikus, 996 F.2d 866, 868 (7th Cir.1993).
 
 
 8
 The Illinois law at issue in this case is 40 ILCS 5/8-244, which in relevant part states:
 
 
 9
 No annuitant, pensioner, refund applicant, or other beneficiary shall have any right to transfer or assign his annuity, refund or disability benefit or any part thereof by way of mortgage or otherwise, except that:
 
 
 10
 ....
 
 
 11
 (2) in the case of refunds, a participant may pledge by assignment, power of attorney, or otherwise, as security for a loan from a legally operating credit union making loans only to participants in certain public employee pension funds described in the Illinois Pension Code, all or part of any refund which may become payable to him in the event of his separation from service;....
 
 
 12
 "A refund is the return to the employee of all [her] contributions into the [retirement and disability] Fund upon [her] termination of employment where the employee is not fully vested in the Fund at [her] termination." In re Davis, 86 B.R. 556, 557 (N.D.Ill.1988). It is important to recognize that this statute does not allow the Credit Union to encumber a member's pension, but only any refund of a debtor's contribution to her retirement fund that she elects to take upon her termination of employment with the city. Should Clark elect to not take a refund and wait for her retirement to receive her pension, the Credit Union will not be able to take any of her pension money.
 
 
 13
 The Bankruptcy Code provides that an individual debtor can retain certain exempt property while the debtor's non-exempt property may be used to satisfy creditors' claims. 11 U.S.C. § 522. Clark acknowledges that 11 U.S.C. § 522(b)(1) of the Bankruptcy Code allows states to "opt out" of the federal exemptions enacted by Congress and enumerated in § 522(d). Illinois is one of numerous states that have chosen to "opt out" of the federal bankruptcy exemptions and enact its own exemption scheme pursuant to § 522(b)(1). Therefore, residents of Illinois are not permitted to use the federal exemptions provided in § 522(d) "except as may otherwise be permitted under the laws of Illinois." 735 ILCS 5/12-1201; see Yonikus, 996 F.2d at 870.
 
 
 14
 The unambiguous language of Sec. 522(b) implicitly indicates a state may exempt the same property included in 522(d), more property than that included in 522(d), or less property than that. In fact, states may also prescribe their own requirements for exemptions which may either circumscribe or enlarge the list of exempt property.
 
 
 15
 In re Goering, 23 B.R. 1010, 1013 (Bankr.N.D.Ill.1982) (citing In re McManus, 681 F.2d 353 (5th Cir.1982)).
 
 
 16
 Clark relies on Davis, 86 B.R. 556 (N.D.Ill.1988), where the court held that the Credit Union did not have a valid lien attaching to Davis's pension refund. However, subsequent to the Davis decision, 40 ILCS 5/8-244 was amended in 1991 to explicitly allow the assignment of refunds as security for a loan from a credit union meeting certain requirements. In the case before us, the district court explained that the validity of § 8-244 has been directly upheld by the Illinois appellate court in Wright v. Chicago Mun. Employees Credit Union, 265 Ill.App.3d 1110, 203 Ill.Dec. 164, 639 N.E.2d 203 (1994). In Wright, the court determined that the statute does not preclude an employee from assigning her annuity refund to the Credit Union, nor had the Credit Union been prohibited from receiving a security interest in an employee's refund under the predecessor to the 1991 amendment.[1] Clark asserts that the ruling is inapposite to her case because the Wright case did not have anything to do with bankruptcy.
 
 
 17
 Clark argues that although Illinois is allowed to opt-out of the federal exemptions, it "must stay within the framework and principals [sic] which Congress intended states to use when acting under the authority delegated to them." She further argues that the Illinois State legislature does not have "free reign to create or destroy exemptions, as they pertain to bankruptcy, without regard to the detailed framework set up by Congress." Clark relies on In re Balgemann, 16 B.R. 780 (Bankr.N.D.Ill.1982), to support her position. The court in Balgemann held that "States which wish to elect to opt out of the federal exemptions must still provide debtors adequate property for them to begin their fresh starts." Id. at 782.
 
 
 18
 However, in In re Sullivan, 680 F.2d 1131 (7th Cir.1982), we implicitly overruled the argument from Balgemann that Clark relies upon. See In re Neiheisel, 32 B.R. 146, 156 n. 57 (Bankr.D.Utah 1983) (stating that Balgemann was implicitly overruled by Sullivan). Indeed, the case law clearly reflects that the fresh start policy of the Bankruptcy Code does not require those states that have opted out of the federal exemptions to provide exemptions comparable, concomitant, or corresponding to the federal exemptions. In re Talmadge, 832 F.2d 1120, 1125 (9th Cir.1987); In re Golden, 789 F.2d 698, 700 (9th Cir.1986); Hinkson v. Pfleiderer, 729 F.2d 697, 699 (10th Cir.1984); Rhodes v. Stewart, 705 F.2d 159, 163-64 (6th Cir.1983); McManus, 681 F.2d at 355; Sullivan, 680 F.2d at 1137; Neiheisel, 32 B.R. at 156-57, 156 nn. 56 & 58; Goering, 23 B.R. at 1012. In Sullivan, we addressed a preemption argument by stating:
 
 
 19
 To say that state exemption provisions providing less solace to debtors than the federal exemptions of section 522(d) are in "conflict" with either the language of the Code or expressions of Congressional intent underlying it is simply inaccurate. If Congress has the power to permit states to set their own exemption levels, the Illinois provisions are constitutional.
 
 
 20
 Sullivan, 680 F.2d at 1137; see In re Ondras, 846 F.2d 33, 35 (7th Cir.1988) (listing other circuit cases that have held that § 522(b)(1) "preserves for the states the ability to substitute their own list of exemptions for those specified in the federal statute."); In re Granger, 754 F.2d 1490, 1492 (9th Cir.1985). Because Illinois has opted out of the federal exemptions, the Illinois scheme of exemptions is allowed to be "quite inconsistent with the general goals of the federal Bankruptcy Code." In re Geise, 992 F.2d 651, 655-56 (7th Cir.1993).
 
 
 21
 Further, in Sullivan, we reviewed the legislative history of § 522(d) and determined that the intention of providing a fresh start could not be attributed to Congress as a whole, but only to the House. Sullivan, 680 F.2d at 1136. In Sullivan, we stated:
 
 
 22
 We find the legislative evolution of the Code extremely important. The bill introduced in the Senate proposed allowing state law to govern exemptions as it had under the 1898 Act. The House bill, by contrast, proposed allowing a bankrupt debtor to choose between state exemptions and enumerated federal exemptions. The language of section 522(d) is parallel, for the most part, to the provisions regarding exemptions in the House bill. The opt-out provision, section 522(b)(1), for which there is virtually no legislative history, was added to section 522 as a compromise provision. We find from this history that the intention of providing a "fresh start" can be attributed only to the House. A resolve to let states determine the applicable exemptions must be attributed to the Senate. Congress did not resolve this difference. It settled on a "compromise" which in some cases may thwart the underlying purpose of the House. This court cannot seize upon the motivation of the House as representative of the entire Congress when the enacted legislation clearly warrants a contrary conclusion.
 
 
 23
 Id. at 1135-36 (citations omitted). Thus, Congress agreed to allow states the option of opting out of the exemptions in § 522(d) pursuant to § 522(b)(1).
 
 
 24
 Although Clark may emerge from bankruptcy with less money than she might have if the state had not opted-out of the federal exemptions, she will still emerge from bankruptcy free of her pre-existing debt. As the validity of 40 ILCS 5/8-244 has been upheld, we affirm the district court's determination that the Credit Union was entitled to a security interest in the signature and car loans taken by Clark. This leaves remaining the issue of whether the Credit Union was allowed to take a security interest in Clark's pension refund for her outstanding credit card balance.
 
 
 25
 B. Security Interest in Advances Pursuant to a Credit Card
 
 
 26
 The district court determined that although the Credit Union could have a security interest in the signature and car loan, it could not have a security interest in a revolving line of credit (Visa credit card). The court found § 8-244(2) to be a very narrowly drawn exception to the rule that employees cannot pledge a security interest in their pension refunds. The district court also noted that the statute only refers to loans and fails to mention lines of credit. In support of its decision, the judge made reference to the facts that the Illinois legislature has made a distinction between loans and lines of credits in the Illinois Credit Union Act, 205 ILCS 305/33, and that in State of Ill. ex rel. Lignoul v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 409 F.Supp. 1167, 1178 (N.D.Ill.1975), aff'd. in part, rev'd in part on other grounds, 536 F.2d 176 (7th Cir.1976), it was determined that loans and lines of credit are different, "most significantly because of the interest aspect of a loan and when it begins to accrue." (R. 10, District Court Order at 6.) As the district court's determination that the Credit Union could not take a security interest in Clark's pension refund to secure her Visa card debt, was based solely on its interpretation of the law, we also review this decision de novo. Yonikus, 996 F.2d at 868; Triad Assoc., 10 F.3d at 495.
 
 
 27
 Section 8-244(2) states that "in the case of refunds, a participant may pledge by assignment, ... as security for a loan from a legally operating credit union ... all or part of any refund...." It is a well settled rule in statutory construction that the "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); see In re Lifschultz Fast Freight Corp., 63 F.3d 621, 628 (7th Cir.1995). Further, we presume that the ordinary meaning of the language at issue accurately expresses the legislative purpose. Morales v. Trans World Airlines, 504 U.S. 374, 383, 112 S.Ct. 2031, 2036-37, 119 L.Ed.2d 157 (1992). However, " '[s]tatutes should receive a sensible construction, such as will effectuate legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion.' " United States v. McGee, 60 F.3d 1266, 1270 (7th Cir.1995) (quoting In re Chapman, 166 U.S. 661, 667, 17 S.Ct. 677, 680, 41 L.Ed. 1154 (1897)).
 
 
 28
 The Credit Union asserts that the district court's conclusion, that advances made pursuant to a credit card fail to fall under the statute's use of the term loan, is both contrary to the plain meaning of the statute and creates the absurd result of allowing the Credit Union to secure one type of loan, while prohibiting the creation of a security interest in another type of loan. The Credit Union asserts that the district court incorrectly determined that the Illinois legislature did not intend to include lines of credit within the meaning of the term loan. It argues that there is no logical reason why the Illinois General Assembly would restrict the type of loans that could be secured by a pledge of a member's refund.
 
 
 29
 The Credit Union also states that preventing it from taking a security interest in credit card advances would be contrary to the purpose of the legislation. It asserts that "[t]he purpose of allowing the Credit Union to take a security interest in refunds of pension contributions is to ensure that the Credit Union has an easy and effective way of satisfying outstanding debts when a Credit Union member stops working for the City of Chicago." The Credit Union elaborates that the right to take pension refunds protects the interest of all the city employees who are members of the non-profit Credit Union. This is because higher losses as a result of defaults and higher transaction costs in attempting to collect money owed from individuals such as Clark are necessarily borne by the other members of the Credit Union. It is these members that would bear the costs of higher interest rates and restricted availability to revolving lines of credit.
 
 
 30
 The district court acknowledged that the question of whether the Illinois legislature intended to include lines of credit within the meaning of the term loan is a "question [that] is not free from difficulty." It has previously been stated that, "[t]he contracts underlying the issuance of credit cards with respect to cash advances are, in effect, agreements to make small loans to the customer at some future presentation of a valid card. That agreement does not transfer any funds and, therefore is not a loan...." Continental, at 409 F.Supp. at 1178. In Continental, the court held that, with respect to a credit card, a loan is not made until the time when a cash advance is taken. Id.; Independent Bankers Ass'n of America v. Smith, 534 F.2d 921, 948 (D.C.Cir.1976) ("A loan is made (and 'money lent') when the customer receives funds on which he immediately begins to pay interest...."). The Continental court stated that "[a]lthough a loan may be generally defined as a contract whereby one delivers money to another who agrees to return an equivalent sum at a future time, a significant aspect of a loan is the running of interest...." Continental, 409 F.Supp. at 1178.
 
 
 31
 The Credit Union makes clear that it does not seek to use Clark's pledge of her pension fund to secure her line of credit, but rather to secure the amount of money already extended pursuant to that line of credit. The Credit Union argues that the balances due on Clark's Visa account are debts that are owed to the Credit Union which are consistent with the definition of a loan from Continental: money advanced pursuant to an agreement to repay it at some later date, with interest.
 
 
 32
 As the district court pointed out, the Illinois Credit Union Act does distinguish between loans and lines of credit. 205 ILCS 305/33; 205 ILCS 305/47; 205 ILCS 305/50. This use of separate terminology indicates that the Illinois legislature recognized a distinction between a loan and a line of credit, and therefore would have also used the term "lines of credit" if they intended the narrow exception of § 8-244(2) to include both loans and debts pursuant to lines of credit. In response to this reasoning, the Credit Union argues that 205 ILCS 305/50 implicitly recognizes that advances under lines of credit are loans. That statute provides that "[w]here a line of credit has been approved, no additional loan applications are required as long as the total outstanding advances under the line of credit do not exceed the maximum amount as stated in the line of credit agreement." 205 ILCS 305/50. The Credit Union argues that the use of the term "loan application" in this statute indicates that the Illinois legislature acknowledged that each credit card advance was a loan, and that in the absence of the agreement for a line of credit there would have to be a loan application filled out for each advance.
 
 
 33
 Despite the Credit Union's arguments, we construe the legislature's exclusion of the use of the term "line of credit" in § 8-244(2) as a purposeful decision that the legislature made advisedly, especially when considered that the legislature explicitly used the term "line of credit" along with its discussion of loans throughout the Illinois Credit Union Act. Wright, 203 Ill.Dec. at 169, 639 N.E.2d at 208 (exclusion of provision barring assignment of refunds in other statutes did not indicate that such an exclusion was meant to apply to § 8-244 where the exclusion was not stated); Siciliano v. Village of Westchester Firefighters' Pension Fund, 202 Ill.App.3d 964, 148 Ill.Dec. 288, 290, 560 N.E.2d 885, 887 (1990) ("Where a particular provision appears in a statute, the failure to include that same requirement in another section of the statute will not be deemed to have been inadvertent."). "The use of certain words in one instance by the legislature, and different words in another, indicate that different results were intended." Illinois State Toll Highway Auth. v. Karn, 9 Ill.App.3d 784, 293 N.E.2d 162, 165 (1973). Thus, we will not infer that the state legislature intended to allow the Credit Union to obtain a security interest in pension refunds for advances made pursuant to a credit card and accordingly the Credit Union is not entitled to one.
 
 III. CONCLUSION
 
 34
 The district court properly determined that the Credit Union is entitled to have a security interest in any pension refund that Clark takes for the car and signature loans, but not for the credit card debt.
 
 
 35
 AFFIRME D.
 
 
 36
 MANION, Circuit Judge, concurring in part and dissenting in part.
 
 
 37
 I agree with the court's analysis in part II.A but part company on part II.B. Clark's failure to pay the credit union the balance due on the credit card was a loan. As noted in State of Ill. ex rel. Lignoul v. Continental Nat'l Bank and Trust Co. of Chicago, 409 F.Supp. 1167, 1178 (N.D.Ill.1975), "a loan may be defined as a contract whereby one delivers money to another who agrees to return an equivalent sum at a future time[;] a significant aspect of a loan is the running of interest." Not only did Clark have a line of credit, which allowed her to borrow up to a certain amount in the future, but she actually drew down on that line, thus using her credit card to acquire a loan from the bank to pay third parties. She now owes principal and interest on that loan. As noted in Continental, a simple agreement to make small loans by use of a credit card does not a loan make. "A loan is not made until the time when a cash advance is taken." Supra at 546 (citing Continental ). The same is true of a credit card charge. Until interest begins to run, no loan is made. "If payment is made within the specified payment period, no interest accrues at all." Continental, 409 F.Supp. at 1178.
 
 
 38
 Clark did not pay on time, thus interest began to accrue on the balance due. That is clearly a loan that should be secured by the refund. "A loan is made (and 'money lent') when the customer receives funds on which he immediately begins to pay interest...." Independent Bankers Ass'n of America v. Smith, 534 F.2d 921, 948 (D.C.Cir.1976). Although Clark did not physically receive funds, she received goods from merchants, who received cash from the credit union. When she did not pay the credit union on time, interest--and a loan--began. I agree with the decision of the bankruptcy court and would reverse the district court on this issue.
 
 
 
 [1]
 The Davis court analyzed the pre-1991 amendment language which stated that "[n]o annuitant, pensioner or other beneficiary shall have any right to transfer or assign his annuity or disability benefit or any part thereof by way of mortgage or otherwise." Ill.Rev.Stat. ch. 108 1/2 § 8-244 (1985) (emphasis added). In Davis, the court concluded that the restriction on assigning an "annuity or disability benefit or any part thereof" included a refund. Davis, 86 B.R. at 558. However, in Wright, the Illinois appellate court found that determination to be inaccurate and stated that § 8-244, "even as it existed before the 1991 amendment, ... permit[ted] assignments of refunds." Wright, 203 Ill.Dec. at 170, 639 N.E.2d at 209