*In re* MARRIAGE OF TAMERA SUE MAY, Petitioner-Appellee, and TOMMY JOE MAY, Respondent-Appellant.

Third District   No. 3—96—0588

Opinion filed March 18, 1997.

Frederick P. Kopp (argued) and Peter H. Lousberg, both of Lousberg, Kopp, Kutsunis & Weng, P.C., of Rock Island, for appellant.

James L. Tappa (argued), of Spector, Tappa & Nathan, of Rock Island, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:
In this case, we are confronted with the intriguing issues of big-

amy and deceit. But the fundamental question we must answer is whether a second husband may have his marriage declared void after his wife's prior marriage has been dissolved, despite the fact that he lived in a conjugal relationship with his wife for almost four years thereafter. We hold that he cannot.

## FACTS

Tamera and Tommy were married in Illinois in 1989. They had three children, Randy, born in 1989, Michael, born in 1991, and Megan, born in 1992. At the time the parties were married, Tamera was still married to her first husband, and she remained married to him until a dissolution judgment was entered in Texas in 1991. Tamera testified that she married her first husband solely to enable him to obtain an immigration visa.

At the time Tamera and Tommy were married, Tommy was aware that Tamera's divorce had not yet been presented to the Texas court. However, Tamera told Tommy that the divorce would be entered by the court within a week of their marriage. Tommy and Tamera continued to cohabit as husband and wife until shortly before Tamera filed her petition for dissolution of marriage in December 1994. During a deposition in the instant divorce proceedings, Tommy discovered that Tamera's divorce from her first husband had been delayed.

After the trial court entered the judgment of dissolution, Tommy filed a motion to reconsider that asked the court to clarify the duration of the marriage in light of Tamera's prior marriage. The trial court ruled that the parties' marriage was void in 1989 but became valid on the date Tamera's marriage to her first husband was dissolved. In making this ruling, the trial court relied on section 212 of the Illinois Marriage and Dissolution of Marriage Act (Act), which provides that parties to a prohibited marriage who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment. 750 ILCS 5/212(b) (West 1994). Thereafter, Tommy filed another motion to declare the marriage void *ab initio* and set aside all orders related to the marriage. The trial court denied this motion because it had previously entered a ruling on the validity of the parties' marriage. This appeal followed.

## DISCUSSION

The sole issue on appeal is whether the cohabitation required by section 212(b) of the Act must occur with knowledge that the prior impediment to the marriage has been removed.

■ The overriding objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Roser v.*

*Anderson*, 222 Ill. App. 3d 1071, 584 N.E.2d 865 (1991). If statutory language is susceptible to more than one interpretation, the court may look beyond the language to consider the purposes to be served by the statute. *Sisters of the Third Order of St. Francis v. People ex rel. Barra*, 151 Ill. App. 3d 875, 503 N.E.2d 1069 (1987). If, however, the language is clear, the court must confine its inquiry to a consideration of that language and must not look to extrinsic aids. *In re Marriage of Logston*, 103 Ill. 2d 266, 469 N.E.2d 167 (1984). This court reviews questions of statutory construction *de novo*. See *Wright v. Chicago Municipal Employees' Credit Union*, 265 Ill. App. 3d 1110, 639 N.E.2d 203 (1994).

■ Section 212 of the Act prohibits marriage prior to the dissolution of an earlier marriage of one of the parties. 750 ILCS 5/212(a)(1) (West 1994). This section further provides that "[p]arties to a marriage prohibited under subsection (a) of this Section who cohabit after removal of the impediment are lawfully married as of the date of the removal of the impediment." 750 ILCS 5/212(b) (West 1994).

■ Although Tommy does not deny that he and Tamera lived together as husband and wife after Tamera's 1991 divorce from her first husband, he claims that such cohabitation is not enough to validate the marriage under section 212(b) of the Act. He argues that since a bigamous marriage is void *ab initio* (see *Cartwright v. McGown*, 121 Ill. 388, 12 N.E. 737 (1887)), section 212(b) can only operate to create a lawful marriage if all of the requisite elements of a valid marriage exist. Because consent is a requisite element of marriage (*Larson v. Larson*, 42 Ill. App. 2d 467, 192 N.E.2d 594 (1963)), Tommy claims that section 212(b) operates to validate a prohibited marriage only if the parties cohabit after the impediment is removed *and* both parties have knowledge that the impediment has been removed. This position is untenable.

Since the term "cohabit" is not ambiguous, we must apply the statute as written without the addition of requirements that are not found in the express language of the statute. Accordingly, we cannot read a *scienter* requirement into section 212(b) of the Act.

■ In addition, a critical reading of section 212(b) discloses that Tommy's proposed interpretation of the statute is improper. Since common law marriages are not recognized in Illinois, cohabitation alone can never result in a valid marriage. Because section 212(b) operates to create a valid marriage based solely upon cohabitation after the removal of an impediment, we must assume that the legislature intended to ascribe some meaning to the wedding ceremony that created the bigamous marriage. Moreover, although a bigamous marriage is void *ab initio*, it does not follow that such a

marriage lacked all of the necessary elements of a marriage or that the parties' manifestations of consent at the wedding ceremony must be ignored for all purposes. It thus appears that section 212(b) presupposes that the bigamous marriage is valid in every regard except for the fact that it took place prior to the dissolution of an earlier marriage of one of the parties. Accordingly, a consent requirement need not be read into section 212(b) because a bigamous marriage does not necessarily lack the element of consent.

The foregoing analysis does not foreclose the possibility that a bigamous marriage lacked the required consent of the parties at the time they entered into the marriage. In such a case, section 212(b) would not operate to ratify the marriage. However, lack of consent and bigamy are separate defects. For these reasons, we hold that section 212(b) of the Act operates to ratify a bigamous marriage regardless of whether the parties have knowledge that the impediment has been removed.

■ Tommy also claims that the trial court's interpretation of section 212(b) does not comport with sections 301 and 305 of the Act. According to section 301, a court shall enter a judgment declaring the invalidity of any marriage which is prohibited. 750 ILCS 5/301(4) (West 1994). Section 305 provides that a person who has gone through a marriage ceremony and cohabited with another to whom he is not legally married in the good-faith belief that he was married to that person is a putative spouse until he acquires knowledge that he is not legally married. 750 ILCS 5/305 (West 1994). Neither of these provisions is inconsistent with our interpretation of section 212(b).

■ While bigamy is clearly grounds for annulment, once a bigamous marriage is legalized by operation of section 212(b), it can no longer be considered a "prohibited marriage." Similarly, section 305 of the Act confers putative spouse status only on those who are not legally married. Thus, Tommy lost his status as Tamera's putative spouse when his marriage was ratified by operation of section 212(b). Accordingly, we reject this argument.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOMER and McCUSKEY, JJ., concur.