THE PEOPLE *ex rel.* JOHN R. LUMPKIN, Director of the Department of Public Health, Plaintiff-Appellant, v. PEGGY FRANTZ, Indiv. and d/b/a Lake Manor, *et al.*, Defendants-Appellees.

Third District   No. 3—97—1028

Opinion filed July 13, 1999.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Sally A. Swiss (argued), Assistant Attorney General, of counsel), for the People.

John A. Bernardi (argued), of Pekin, for appellee Retirement Home Consultants.

Kevin McDermott (argued), of Springfield, for appellee Peggy Frantz.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

The People *ex rel*. John R. Lumpkin, M.D., Director of the Illinois Department of Public Health, brought a nuisance action against Peggy Frantz, individually and d/b/a Lake Manor, and Retirement Home Consultants, Inc., among others, alleging that the defendants operated or maintained a facility in violation of the Nursing Home Care Act (Act) (210 ILCS 45/1—101 *et seq.* (West 1994)). The complaint alleged that Frantz provided personal care, sheltered care, and nursing care to individuals at Lake Manor, and that the facility should be declared a public nuisance in accordance with section 3—701 of the Act. 210 ILCS 45/3—701 (West 1994).

Following a bench trial, the trial court determined that the defendants were not subject to the licensing requirements of the Act, in that neither the ownership nor management of Lake Manor exerted control over or provided personal care, sheltered care or nursing care to any of the residents of Lake Manor. The trial court dismissed the complaint and entered judgment for the defendants. The People appealed and we affirm.

The evidence adduced at trial was largely undisputed. Lake Manor is a retirement home owned by Peggy Frantz and Frantz had owned and rented rooms to elderly residents since approximately 1984. She had never received a licence to operate Lake Manor as a shelter care facility and had never applied for a nursing home licence. At the time the complaint was filed, Frantz lived in the downstairs of the home and approximately 21 individuals lived upstairs.

Prior to January 1, 1994, according to unrebutted testimony from

inspectors from the Department, Frantz had approximately 11 employees, some of whom were engaged in providing personal and nursing care to some residents. However, sometime in 1993, Frantz was alerted to the fact that she may be in violation of the Act by providing certain services to her residents. In response, she entered into a contract, effective January 1, 1994, with defendant Retirement Homes Consultants, Inc. (RHC), a corporation owned solely by David Foster. The acknowledged purpose of Frantz' contract with RHC was to separate the personal and nursing services aspects of residents' needs from the physical needs of the residents. The record is unrebutted that Frantz had no ownership in RHC and that neither RHC nor Foster had an ownership interest in Lake Manor.

Among the duties RHC performed on behalf of Lake Manor was assisting in procuring a licenced home health care agency, which would provide personal care or nursing care for the residents of Lake Manor. Effective January 1, 1994, Physician's Home Health Care of Peoria (Physician's) took over all aspects of personal and nursing care for the residents. The record established that Frantz had no ownership interest or control over Physician's. However, it was unrebutted that Foster had an option to purchase Physician's, although Frantz was not aware of that option.

At the point in time that Physician's took over providing personal and nursing services to the residents of Lake Manor, several of Frantz' former employees, who met state requirements, became employees of Physician's Home Health Care of Peoria (Physician's). Physician's also agreed to provide a presence in the home on a 24-hour-per-day basis.

Since January 1, 1994, residents contracted with Lake Manor to provide food, shelter and laundry services only. The rental agreement between Lake Manor and each individual resident stated that Lake Manor would provide lodging, laundry services, and three meals per day. The agreement further specified that Lake Manor would not provide personal services or nursing services to any residents. Lake Manor employed five individuals; three cooks, one person to do the laundry and one to oversee the general maintenance of the property itself.

The record established that Lake Manor did not hire or have direct control over any individuals providing personal care or nursing services after January 1, 1994. The residents contracted separately and independently with home health care agencies licenced and regulated by the Department of Public Health under the Home Health Agency Licensing Act (210 ILCS 55/1.01 *et seq.* (West 1994)). Initially, it appears from the record that all residents were required by RHC to

contract with Physician's for personal and nursing services. However, by the time the complaint was filed on December 22, 1994, this requirement had been eliminated and approximately six licenced home health care agencies, including Physicians, were providing personal care and nursing services to the residents of Lake Manor.

The trial court determined that Lake Manor was not a facility subject to regulation under the Act and dismissed the State's complaint. This appeal ensued.

The issue to be resolved in this matter is whether the trial court erred in holding that Lake Manor was not a facility subject to regulation as that term is defined under section 1—113 of the Nursing Home Care Act (210 ILCS 45/1—113 (West 1994)). Questions of the scope and application of a statute are subject to *de novo* review. *In re Marriage of May*, 286 Ill. App. 3d 1060 (1997).

■ The preeminent goal of a court construing a statute is to give effect to the legislature's intent. *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282 (1994). Statutory language is the best indicator of this intent, and where such language reveals the legislative drafters' intent, we may not resort to other aids for construction. *People v. Brooks*, 158 Ill. 2d 260, 264 (1994). Here, the language of the Act establishes the legislative intent that retirement homes providing only food, shelter and laundry services were not intended to be required to fulfil licensing requirements under the Act.

The Act provides that "[n]o person may establish, operate, maintain, offer or advertise a facility within this State unless and until he obtains a valid license." (210 ILCS 45/3—102 (West 1994). The Act further defines a "facility" as:

> "[A] private home, institution, building, residence, or any other place, whether operated for profit or not, *** which provides, through its ownership or management, personal care, sheltered care or nursing for 3 or more persons, not related to the applicant or owner by blood or marriage." 210 ILCS 45/1—113 (West 1994).

The Act defines "personal care" as:

> "[A]ssistance with meals, dressing, movement, bathing or other personal needs or maintenance, or general supervision and oversight of the physical and mental well-being of an individual, who is incapable of maintaining a private, independent residence or who is incapable of managing his person whether or not a guardian has been appointed for such individual." 210 ILCS 45/1—120 (West 1994).

Under the Act, " '[s]heltered care' means maintenance and personal care." 210 ILCS 45/1—124 (West 1994). " 'Maintenance' means food, shelter and laundry services." 210 ILCS 45/1—116 (West 1994).

■ Under the statutory scheme outlined above, a retirement home that provides, through its ownership or management, "personal care," "sheltered care" or "nursing" comes within the regulatory and licensing requirements of the Act. Thus, a retirement home that provides only "maintenance" *i.e.*, food, shelter and laundry services, is not a "facility" as that term is defined under the Act. Only when those services are combined with "personal care" does the home become "sheltered care" thereby requiring licencing by the Department of Public Health.

■ As "personal care" is both a component of "sheltered care" and an independent basis upon which licensing can be required, the instant matter turns upon whether the defendants, Frantz as owner or RHC as manager of Lake Manor, provided "personal care" to the residents of Lake Manor. The trial court determined that these defendants did not provide assistance with meals, dressing, movement, bathing, or other personal needs to any of the residents of Lake Manor. Rather, those services were provided by independent home health care agencies.

The State acknowledges that these home health care agencies provided the personal care services to the residents of Lake Manor after January 1, 1994. However, it maintains that Frantz still exercised control over those providers simply by allowing those providers into the building. We cannot agree. The record is unrebutted that the home health care agencies were given unrestricted access to the home and Frantz made no effort to control the operations of these agencies. To the contrary, the record establishes that the six home health care agencies provided personal care and nursing services to the residents without any input from Frantz or RHC.

Likewise, we are not persuaded by the State's argument that RHC controlled the actions of the home health care agencies by helping the residents to arrange for services with a home health care provider if that resident did not already have an agreement with a provider. In so finding, we are mindful that, for a period of time prior to the filing of the complaint, RHC and Frantz required residents to contract with Physician's for their personal and nursing care. However, it is undisputed that this practice had stopped at some point in time prior to the filing of the complaint. Had this practice continued, we would be inclined to agree with the State that RHC and Frantz exerted sufficient control over the provision of personal and nursing services to warrant a finding that those services were provided by Lake Manor.

For the foregoing reasons, the order and judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SLATER, J., concurs.

JUSTICE BRESLIN, dissenting:

Because I believe that defendant Peggy Frantz has run afoul of both the spirit and the letter of the Nursing Home Care Act (Nursing Act) (210 ILCS 45/1—113 (West 1996)), I respectfully dissent.

In my view, Lake Manor meets the definition of a "facility" under the Nursing Act. One way for an institution to meet the definition is if its residents are provided personal care, sheltered care or nursing services "through" the institution's ownership. 210 ILCS 45/1—113 (West 1996). Among other definitions, "through" can mean "by the agency of" or "by the intermediary of." Webster's Third New International Dictionary 2384 (1986). In this case, personal care, sheltered care and nursing services are provided "through" Peggy Frantz, whose agent, RHC, arranges for such services with home health care providers. Therefore, I believe Lake Manor is governed by the Nursing Act and must be licensed thereunder.

Moreover, as the majority points out, Frantz has owned Lake Manor since 1984. Prior to 1994, she operated Lake Manor in clear contravention to the Nursing Act by providing personal care and nursing services to her residents through her very own employees, having never received or applied for a license under the Nursing Act. Only after being told by the State that she could no longer furnish such services to her residents without being licensed did Frantz cease to do so. Subsequently, several of Frantz' former employees, who had provided personal care and nursing services while working for Lake Manor, continued to provide those exact same services to Lake Manor residents while technically being employed by Physician's. I believe it is a sham to have so sidestepped the licensing requirements of the Nursing Act.

Furthermore, the fact that Lake Manor may be covered by the Home Health Agency Licensing Act (Home Act) (210 ILCS 55/1.01 *et seq.* (West 1996)) is of little consequence. As I see it, the Home Act was intended to apply to personal care or nursing services which are provided to a person in his or her own home—not a "retirement" home occupied by 21 other elderly residents who all need personal and nursing services.

Although it is possible that Illinois' licensing scheme has simply

not kept pace with society's growing need and desire for flexible living arrangements for our elderly citizens, such an issue is for the legislature to address, not us. Accordingly, I believe the majority has incorrectly held that Lake Manor is not subject to the Nursing Act.

For these reasons, I respectfully dissent.