2024 IL App (2d) 230195
No. 2-23-0195
Opinion filed April 15, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN W. MCDONALD III, Deceased | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Kane County. <br><br> No. 17-P-744 <br><br> Honorable |
| (Ellizzette McDonald, Petitioner-Appellant v. Shawn McDonald, Respondent-Appellee). | ) ) | Robert K. Villa, Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 This case concerns the estate of decedent, John W. McDonald III (John). In a prior appeal, the Illinois Supreme Court affirmed a ruling of the circuit court of Kane County that petitioner, Ellizzette McDonald (Ellizzette), had failed to present a *prima facie* case establishing the validity of her marriage to John. *In re Estate of McDonald*, 2022 IL 126956. Ellizzette then sought to assert her rights as John's putative spouse. To that end, Ellizzette filed a motion for leave to amend objections to the amended proposed distribution plan of the appointed administrator of John's estate, respondent, Shawn McDonald (Shawn), and a motion to amend the order declaring heirship of John's estate. Ellizzette contended that she was John's putative spouse under Illinois law because she participated in a marriage ceremony with John, had cohabited with him in the good-faith belief that she was lawfully married, and did not learn that she was not John's legal spouse

until after he had passed away. After the trial court denied both of her motions, Ellizzette filed a notice of appeal. For the reasons set forth below, we affirm.

¶ 2                              I. BACKGROUND

¶ 3      The facts underlying this case have been set forth at length in the parties' prior appeals. See *In re Estate of McDonald*, 2022 IL 126956, *rev'g* 2021 IL App (2d) 191113. We recount here only those facts and procedural matters necessary to place in context the issues raised in the present appeal.

¶ 4      On May 30, 2017, the circuit court of Kane County entered an order declaring John a disabled person in need of guardianship, as defined in the Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 *et seq.* (West 2016)). The court appointed Shawn (John's brother), as the plenary guardian of John's person and estate. Following Shawn's appointment, John moved to vacate the guardianship order. The court denied John's motion at a hearing on July 6, 2017, but appointed independent counsel (Anthony Scifo) to assist John in seeking the termination of the guardianship.

¶ 5      On July 11, 2017, John and Ellizzette participated in a marriage ceremony in Edgar County. In deposition testimony, Scifo testified that Ellizzette never told him that she and John had married.[1] The first indication Scifo had of John's and Ellizzette's wedding ceremony was when he received a marriage certificate from Ellizzette's attorney in October or November 2017. Scifo further testified that in July or August 2017, prior to learning of the purported marriage, he discussed the validity of a marriage with John and Ellizzette over the phone. Scifo testified, "I believe I said to them *** that they shouldn't get married because there was a guardianship action

---

[1]Portions of Scifo's deposition testimony were attached to a motion Shawn filed in relation to Ellizzette's motion for judgment on the pleadings, which motions are discussed below.

that had been imposed and *** the marriage could be voided by Shawn McDonald because he was the plenary guardian of John." Asked what Ellizzette's response was to his statement, Scifo testified that Ellizzette said:

> "In Australia there is common law marriages that happen all the time, that she was part of the State Department, and according to some international law, the two of them could get married and this wouldn't be an issue, and various other representations of law in other jurisdictions, to which I merely stated 'I am licensed in the State of Illinois and only know the law here.' "

Scifo testified that he also told Ellizzette that common law marriages were not valid in Illinois.

¶ 6    In addition, Scifo testified that, in response to Ellizzette's questions to him about marriage, "[his] statements *** were always [that John] was under [a] guardianship and [he] advised against [marriage] because Shawn would probably have the ability to void the marriage *** as the plenary guardian." Scifo also testified that, in conversations with John, he "would reiterate over and over again, I don't know that you should get married because *** your brother has guardianship over you and he would be able to void it. They'll file a motion, they'll do something and they'll void this marriage." Scifo testified that these conversations took place after the date of the marriage (but before he knew of the marriage). Ellizzette stated in deposition testimony that she became aware that John was a ward of the court sometime in 2017. She later learned that Shawn had been appointed as the guardian. Ellizzette also stated in her deposition testimony that she knew Scifo represented John and that Scifo had "cautioned" John, prior to their wedding ceremony, "that they may try to invalidate the marriage."[2]

---

[2]Portions of Ellizzette's deposition testimony were attached to a motion Shawn filed in

¶ 7 John died intestate on December 11, 2017. On December 15, 2017, Shawn filed a petition for letters of administration and an affidavit of heirship. In the affidavit, Shawn averred that John's only heirs were his parents (John W. McDonald Jr. and Brenda K. McDonald) and his three siblings (Shawn, Heather Ladue, and Brett McDonald). Shawn acknowledged that John "participated in a wedding ceremony with Ellizzette Duvall Minnicelli," but he claimed that the marriage was void *ab initio* because, as a ward, John lacked the capacity to consent to the marriage. On December 19, 2017, the trial court entered orders appointing Shawn administrator and declaring John's heirs to be his parents and three siblings.

¶ 8 On December 22, 2017, Shawn filed a petition for declaration of invalidity of marriage, pursuant to section 301(1) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/301(1) (West 2016)). In the petition, Shawn stated that, during a guardianship hearing on November 16, 2017, he first learned that John had participated in a purported marriage ceremony on July 11, 2017. Shawn asserted that, because John was subject to a guardianship at the time he participated in the marriage ceremony, he lacked the legal capacity to consent to the marriage.

¶ 9 On January 17, 2018, Ellizzette moved to vacate the court's orders appointing Shawn administrator of John's estate and declaring heirship. Ellizzette asserted that she was John's surviving spouse and, as such, his sole heir. Ellizzette further asserted that Shawn was aware that she was John's surviving spouse and, therefore, obtained letters of administration under false pretenses. On February 1, 2018, Ellizzette filed a response to Shawn's petition for declaration of invalidity of marriage, denying that John lacked the capacity to consent to marry.

---

relation to Ellizzette's motion for judgment on the pleadings, which motions are discussed below.

¶ 10    On March 7, 2018, Shawn voluntarily withdrew his petition for declaration of invalidity of marriage. On the same day, Shawn filed his response to Ellizzette's motion to vacate his appointment as administrator, asserting that, although Ellizzette may have participated in a marriage ceremony, John lacked the capacity to enter into a legally valid marriage contract because he was a ward subject to plenary guardianship. In support of his position, Shawn cited section 11a-22(b) of the Probate Act (755 ILCS 5/11a-22(b) (West 2016)), which provides that

> "[e]very note, bill, bond or other contract by any person for whom a plenary guardian has been appointed or who is adjudged to be unable to so contract is void as against that person and his estate, but a person making a contract with the person so adjudged is bound thereby."

Shawn argued that marriage is a contract and, pursuant to the terms of section 11a-22(b) of the Probate Act, the marriage contract of July 11, 2017, is void.

¶ 11    Ellizzette replied, asserting that section 11a-22(b) of the Probate Act was inapplicable to a marriage contract. She contended that the validity of a marriage was governed by section 301 of the Marriage Act (750 ILCS 5/301 (West 2016)). Further, she argued that the validity of the marriage could not be challenged because John was deceased and section 302(b) of the Marriage Act (750 ILCS 5/302(b) (West 2016)) prohibits a party from seeking a declaration of invalidity of marriage after the death of either party to the marriage.

¶ 12    After a hearing on April 18, 2018, the trial court denied Ellizzette's motion to vacate the order appointing Shawn administrator but granted her leave to file a petition for letters of administration and an affidavit of heirship based on her assertion that she was John's surviving spouse and sole heir. Ellizzette filed that petition on May 1, 2018. On June 7, 2018, Ellizzette filed a motion for judgment on the pleadings regarding her petition for letters of administration. Shawn

filed a response in opposition to Ellizzette's motion for judgment on the pleadings and, subsequently, a motion requesting that portions of transcripts from depositions taken of Scifo and Ellizzette be incorporated as part of his response. After a hearing on September 10, 2018, the trial court denied Ellizzette's motion for judgment on the pleadings as "premature."

¶ 13    On October 2, 2018, Shawn filed a motion requesting the trial court to take judicial notice of the "Certified Copy of Edgar County, Illinois Marriage Application and Record of John *** and Ellizzette Duvall Minicelli [*sic*]." Shawn attached three documents to his motion: (1) a certified copy of a "Certification of Marriage" between John and "Ellizzette Duvall Minnicelli" issued by the clerk of Edgar County; (2) a certified copy of a "Marriage License" between John and "Ellizzette Duvall Minnicelli" issued by the clerk of Edgar County; and (3) a certified copy of a "Marriage Application and Record" issued by the clerk of Edgar County. On November 30, 2018, the trial court granted Shawn's motion for judicial notice.

¶ 14    On October 16, 2019, Shawn filed a motion *in limine* to bar Ellizzette from testifying about the existence of a marital relationship, alleging that such testimony was prohibited by the Dead Man's Act (735 ILCS 5/8-201 (West 2016)). In the same motion, Shawn contended that, (1) pursuant to section 11a-17 of the Probate Act (755 ILCS 5/11a-17 (West 2016)), a best-interest hearing was required before John, as a ward of the court, could enter into a marriage and, (2) pursuant to section 11a-22 of the Probate Act (755 ILCS 5/11a-22 (West 2016)), any contract entered into with a ward of the court and a third party is void as to the ward. In response, Ellizzette argued that the plain text of section 8-201(d) of the Dead Man's Act allows her to testify to any fact relating to the heirship of a decedent. The trial court entered an order granting Shawn's motion *in limine* and barring Ellizzette from testifying at trial "regarding her putative marriage to [John] or regarding [John's] heirship."

¶ 15    A bench trial on Ellizzette's claim of heirship was held on November 18, 2019. Ellizzette represented herself at the trial. She presented the testimony of three witnesses to establish that, on July 11, 2017, she entered into a legally valid marriage with John. At the close of Ellizzette's case, Shawn's attorney moved for a directed finding, advancing several grounds for Shawn's position. First, counsel asserted that the best evidence of the existence of a marriage is the marriage certificate itself but that Ellizzette did not produce any such document. Second, he asserted that Illinois law requires two witnesses to a marriage but there were no witnesses to John's marriage to Ellizzette. Third, counsel argued that, although John was a ward of the court, no hearing was ever held to determine if the marriage was in John's best interest, as required by the Probate Act (see 755 ILCS 5/11a-17(a-10) (West 2016)). Fourth, counsel maintained that marriage is a "civil contract" and the Probate Act prohibits a ward of the court from entering a contract with any other person. See 755 ILCS 5/11a-22(b) (West 2016).

¶ 16    The trial court granted Shawn's motion for a directed finding. In so ruling, the court stated that the minimum relevant evidence necessary to establish a *prima facie* case of a valid marriage was "a valid application for a marriage license, a ceremony performed in Edgar County and witnessed by two witnesses." The court then concluded that, as a matter of law, Ellizzette did not present a *prima facie* case of a valid marriage. Specifically, the court held that the marriage was neither properly witnessed nor licensed, that Ellizzette did not present a *prima facie* case of a valid marriage ceremony, and that no best-interest determination was made by the probate court. The court entered an order granting a directed finding in Shawn's favor and included language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 17    Ellizzette timely appealed, raising several issues. This court reversed the trial court's ruling on Shawn's motion *in limine* that barred Ellizzette from testifying. *In re Estate of McDonald*, 2021

IL App (2d) 191113, ¶¶ 73-86. In addition, we concluded that the trial court erred in finding that there was no evidence that the purported marriage was properly licensed or that a valid marriage ceremony was performed in Edgar County. *In re Estate of McDonald*, 2021 IL App (2d) 191113, ¶¶ 91-95. We also determined that Illinois law does not have a statutory provision requiring the presence of witnesses for a marriage to be valid. *In re Estate of McDonald* 2021 IL App (2d) 191113, ¶¶ 96-99. Finally, we determined that the plain language of section 11a-17(a-10) of the Probate Act (755 ILCS 5/11a-17(a-10) (West 2016)) does not require prior approval by the court before a ward can marry. *In re Estate of McDonald*, 2021 IL App (2d) 191113, ¶¶ 100-104. We otherwise affirmed and remanded the matter for further proceedings. *In re Estate of McDonald*, 2021 IL App (2d) 191113, ¶¶ 106-108.

¶ 18    Shawn filed a petition for leave to appeal, which the Illinois Supreme Court granted. *In re Estate of McDonald*, 2022 IL 126956, ¶ 51. On April 21, 2022, the supreme court, in a 4-3 decision, affirmed the judgment of the trial court, concluding that Ellizzette failed to present a *prima facie* case that her marriage to John was valid, because the lack of a judicial determination that the marriage was in John's best interest rendered the marriage void under section 11a-17(a-10) of the Probate Act. *In re Estate of McDonald*, 2022 IL 126956, ¶¶ 90-92. During the course of its discussion, the supreme court referenced the deposition testimony of Scifo and Ellizzette, stating that "Scifo testified that he had discussed, with both John and Ellizzette, the probability that any marriage, if it took place, would be found invalid" and that Ellizzette "confirmed in her deposition that Scifo had advised both her and John, prior to their wedding, that their marriage might not be valid." *In re Estate of McDonald*, 2022 IL 126956, ¶ 23. After the Illinois Supreme Court denied Ellizzette's petition for rehearing, Ellizzette filed a petition for a writ of *certiorari*

with the United States Supreme Court. The United States Supreme Court denied Ellizzette's petition on March 6, 2023.

¶ 19    While the parties' appeals were pending, proceedings on the case continued periodically in the trial court. During this time, Shawn filed various documents, including a proposed distribution plan that he later amended. Under the amended proposed distribution plan, John's father and three siblings would each receive 25% of the net sum distributable to the estate. Ellizzette filed an objection to the amended proposed distribution plan. Ellizzette argued that the amended proposed distribution plan was "improper" because an appeal in the matter was pending, she is John's surviving spouse and sole heir, and the amended proposed distribution plan would distribute John's estate to members of his family who are not John's true heirs. The trial court entered and continued the matter several times during the pendency of the parties' appeals.

¶ 20    On November 2, 2022, after the Illinois Supreme Court denied Ellizzette's petition for rehearing, Ellizzette filed a "Motion for Leave to File Amended Objections to Amended Proposed Distribution Plan of Shawn McDonald" (motion to amend objections). In support of the motion, Ellizzette initially stated:

"[T]he Illinois Supreme Court's denial of rehearing has now determined, as an issue of first impression under Illinois law, that [Ellizzette] was not legally married to *** John***. As the Court construed section 11a-17(a-10) of the Probate Act [(755 ILCS 5/11a-17(a-10) (West 2016))], it requires prior court approval of a ward's marriage after a best interest hearing has been held on a proceeding that only the guardian could initiate. Because, *inter alia*, no decision by any court in Illinois, including this Court or the Second District Appellate Court, had so held prior to the time of her marriage to [John] and the date he

passed, [Ellizzette] did not and could not have obtained knowledge that she was not legally married."

Ellizzette asserted that, while the supreme court's decision "appears to have removed [her] status" as John's legal spouse, it "now also establishes her ability to claim status as the putative spouse of [John] pursuant to [section 305 of the Marriage Act] 750 ILCS 5/305 [(West 2022)] and the common law." Ellizzette asserted that putative-spouse status confers upon her "all rights Illinois confers on legal spouses, until the time she obtained knowledge that she was not legally married."

¶ 21 In support of her putative-spouse claim, Ellizzette contended that she had a good-faith belief that she was legally married to John because she participated in a marriage ceremony with John, she cohabited with John until the time of his death in the good-faith belief that she was married to him, and she did not obtain knowledge that she was not legally married under Illinois law until the Illinois Supreme Court denied her petition for rehearing. Ellizzette argued that, because Shawn's amended proposed plan of distribution conflicts with her status as John's putative spouse, the trial court should grant her leave to file her amended objections, a copy of which was attached to the motion to amend objections. In her amended objections, Ellizzette asked the court to "deny and reject [Shawn's] Amended Proposed Distribution Plan and instead approve and accept [her] Proposed Distribution Plan that distributes [John's] entire estate to her as his sole heir." The trial court entered an order continuing the matter for status to March 9, 2023. At the status hearing, the trial court entered an order allowing Ellizzette to file a memorandum in support of her motion to amend objections and Shawn to file a response thereto.

¶ 22 Ellizzette filed her memorandum on March 23, 2023. The memorandum reiterated and expanded upon the arguments made in the motion to amend objections. The following day, Ellizzette filed a "Motion to Amend Heirship Order." Ellizzette sought to amend the heirship order

of December 19, 2017, to provide that, as John's putative spouse at the time of his death, and because John had no children, Ellizzette is "John's sole heir and entitled to the entirety of his estate." Attached to the motion to amend heirship order was an affidavit of heirship that averred that Ellizzette was John's sole heir as his putative spouse.

¶ 23    On April 13, 2023, Shawn filed a response to Ellizzette's motions. Shawn argued that, by seeking to be declared John's putative spouse and only heir, Ellizzette was making a claim against John's estate, which, under section 18-12(b) of the Probate Act (755 ILCS 5/18-12(b) (West 2022)), had to be filed within two years of John's death and therefore was untimely. Shawn further asserted that it was Ellizzette's burden to prove that she was John's heir and surviving spouse by establishing that she and John entered into a valid marriage. However, the Illinois Supreme Court ruled that she failed to meet this burden. Moreover, Scifo advised the pair that "any marriage they entered into after the Guardianship order was entered was probably invalid" and "Ellizzette ignored that legal advice and proceeded with the marriage ceremony." Additionally, Shawn asserted that Ellizzette never established that she was the "Ellizzette Duval Minicelli [*sic*]" named on the marriage certificate and that Ellizzette had no standing to assert any rights as a putative spouse since the Illinois Supreme Court ruled she was not John's legal spouse.

¶ 24    On April 27, 2023, Ellizzette filed her reply in support of her motions. Ellizzette's reply asserted that Shawn did not contest or deny the factual allegations of her motions and therefore conceded that Ellizzette went through a marriage ceremony with John, cohabited with John in the good-faith belief that she was married to him, and did not obtain knowledge that she was not legally married until after John died. Regarding Shawn's argument that she was required to file her motions within two years, Ellizzette argued that the two-year limitations provision in section 18-12(b) of the Probate Act did not apply because her motions were not claims *against* John's

probate estate. In this regard, Ellizzette asserted that her motions were intended not to reduce the size of the estate but, rather, to change who received the estate. Ellizzette argued that section 5-3 of the Probate Act (755 ILCS 5/5-3 (West 2022)) specifically authorizes the court to ascertain and declare heirship "at any time during the administration of the estate," so the two-year limitation of section 18-12(b) cannot apply to changes in heirship. Ellizzette also maintained that local court rules contemplate changes in distributive rights and corrections to heirship orders during the estate's administration. See Kane County Cir. Ct. Rs. 8.02, 8.03. Finally, Ellizzette asserted that the Illinois Supreme Court's decision on the legality of her marriage to John did not address her status as John's putative spouse. In this regard, Ellizzette contested Shawn's claim that Scifo advised that a marriage between her and John was "probably invalid." According to Ellizzette, Scifo's deposition transcripts "confirmed her testimony that Mr. Scifo stated to John and Ellizzette that Shawn '*may* try to invalidate the marriage if [they] proceeded with [their] intentions.' " (Emphasis in original.) Ellizzette additionally argued that there is a substantial difference under Illinois law between a marriage that is void and a marriage that is voidable. On May 1, 2023, Ellizzette filed a motion for oral argument on her pending motions.

¶ 25   On May 9, 2023, the day Ellizzette's motion for oral argument was set for presentment, the trial court, without hearing evidence or entertaining argument, denied Ellizzette's motions. The trial court concluded that Ellizzette did not have a good-faith belief she was married to John and that her putative-spouse claim was untimely. The court explained:

> "I'm familiar with Section 5/305 [*sic*] [of the Marriage Act (750 ILCS 5/305 (West 2022))] and its language, specifically, that any person having gone through a marriage ceremony, who has cohabitated with another to whom he is not legally married in the good faith belief that the person was married to that person, is a putative spouse until knowledge

of the fact that he is not legally married terminates his status and prevents acquisition of further rights.

In this case, I don't know how [Ellizzette] can make an argument that she is the putative spouse, or even maintain that argument beyond this stage, when the Supreme Court and the record in this case both indicate that not only were [John] and Ellizzette advised by Attorney Scifo of the probability that their marriage would be found invalid or otherwise was void—and I know you've detailed a little bit more of the details of Mr. Scifo's statements in that regard—but as the Supreme Court notes in paragraph 23 of its opinion, Ellizzette confirmed in her deposition that she was advised, and both her and John prior to the wedding, that the marriage might not be valid.

As the Court reads the statute for putative spouse, it's the good-faith portion, good-faith belief, that I don't think she can establish. The putative spouse is really—and to use my own term for it—the innocent spouse, the innocent-knowing spouse; someone who in good-faith is married, believes they're married, has no reason to believe they're not married, which is the all-encompassing portion of good faith.

If a lawyer advises you that it might be void and you go ahead and do it anyway, I don't know that that qualifies as the good-faith basis to render somebody a putative spouse.

The Court finds, based on the record that is established by the Supreme Court, that nothing submitted here is going to have this trial court undo that issue. I believe that issue has already been established by the Supreme Court in its ruling. Ellizzette does not qualify as a putative spouse under Section 5/305 [*sic*] [of the Marriage Act (750 ILCS 5/305 (West 2022))].

Therefore, since those are the—that is the basis for her two motions, the motion for leave to file amended objections and the motion for leave to amend the heirship order to include her name, is [*sic*] denied.

Further, to the extent that she would be bringing such a claim with the knowledge that she may or may not have been married, that claim, as [Shawn] points out, should have been brought within two years of the date of filing. Certainly there was a challenge to the marriage, which was the underlying basis for the entire dispute [in the earlier proceeding], even noting at the end of the Supreme Court's decision that it was something aware— Ellizzette must have been aware of.

Paragraph 87 from the Supreme Court's decision finds Ellizzette was aware, at the time the marriage took place, that as a result of guardianship proceedings, John was under the plenary guardianship per Shawn, and for that reason, the marriage might not be valid.

It is also clear from the record that no best interests finding was ever sought or made. *** Ellizzette could not have provided any testimony that would have been sufficient to prove the validity of the marriage. Consequently, she could not have been prejudiced by her inability to testify regarding the marriage.

Now for that reason and the conclusions reached by the Supreme Court on that fact, the Court denies both motions."

The trial court subsequently entered a written order denying Ellizzette's motion for oral argument, the motion to amend objections, and the motion to amend heirship order, for the reasons stated on the record. On June 6, 2023, Ellizzette filed a notice of appeal.

¶ 26                                      II. ANALYSIS

¶ 27    On appeal, Ellizzette argues that the trial court's denial of her motions was improper. Ellizzette raises two principal contentions in support of her position. First, Ellizzette contends that the trial court erroneously determined that the record on her status as a putative spouse was "established" by the supreme court in the prior appeal, insofar as the supreme court did not consider or decide her status as John's putative spouse, it did not cite factual findings from a trial or hearing, and its statement of facts inaccurately summarized her deposition testimony and the deposition testimony of Scifo. Ellizzette further contends that, even if the supreme court's "gloss" on the deposition testimony were accepted, it does not show that she did not have a good-faith belief that she was married to John. Second, Ellizzette argues that her motions are not barred by the two-year limitations provision of section 18-12(b) of the Probate Act (755 ILCS 5/18-12(b) (West 2022)).

¶ 28    Shawn responds that the trial court correctly ruled that Ellizzette could not have believed, in good faith, that she was legally married to John, because the record shows that Ellizzette knew before she participated in a marriage ceremony that the union might not be valid due to John's status as a ward of the court. Shawn also argues that any putative-spouse claim is barred by section 18-12(b) because, despite having actual knowledge of the estate and participating in litigation arising out of the estate's administration, Ellizzette never asserted a claim as a putative spouse until more than two years after John's death.

¶ 29    We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016), which governs appeals from orders entered in the administration of an estate, guardianship, or similar proceeding that finally determine a right or status of a party. See also Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988) (providing that examples of the orders to

which Rule 304(b)(1) applies include "an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim").

¶ 30                          A. Section 18-12(b) of the Probate Act

¶ 31    We first address whether the trial court erred in determining that Ellizzette's putative-spouse claim is barred by the limitations provision in section 18-12(b) of the Probate Act (755 ILCS 5/18-12(b) (West 2022)). That provision states that "[u]nless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." 755 ILCS 5/18-12(b) (West 2022). The applicability of a limitations provision presents a legal question, subject to *de novo* review. *In re Estate of Topal*, 2022 IL App (4th) 210613, ¶ 14.

¶ 32    Ellizzette disputes the trial court's determination that her motions are barred by the two-year limitations provision of section 18-12(b). According to Ellizzette, section 18-12(b) applies only to claims *against* the estate. She directs us to section 18-10 of the Probate Act (755 ILCS 5/18-10 (West 2022)), which classifies claims against a decedent's estate. She asserts that the "common thread to all such 'claims' [in section 18-10] is that, if allowed, they reduce the assets of the estate that are available for distribution." She reasons that, since neither of her motions sought a judgment against John's estate or payment by the estate for any tort, contract, or other cause of action, they did not seek to reduce the value of the estate and, therefore, are not claims *against* the estate. As such, she contends that the two-year limitations provision set forth in section 18-12(b) of the Probate Act does not apply. Ellizzette finds additional support for her position in section 5-3(a) of the Probate Act (755 ILCS 5/5-3(a) (West 2022)), which allows the trial court to declare or amend orders of heirship "at any time during the administration of the estate," and local

court rules (Kane County Cir. Ct. Rs. 8.02, 8.03), which authorize the trial court to make changes in distributive rights during the administration of an estate and to amend any heirship order that is "incomplete or erroneous."

¶ 33     Shawn responds that the limitations provision of section 18-12(b) of the Probate Act requires that *all* claims against an estate be made within two years of the decedent's death. He argues that Ellizzette's assertion that she is the putative spouse constitutes a claim against the estate for purposes of section 18-12(b) because it is "dispositive as to the rights of all of the assets of the estate through heirship." Shawn characterizes Ellizzette's argument that her motions were not intended to reduce the size of the estate as disingenuous because it ignores the fact that, if successful, Ellizzette's claim will reduce the value of the estate to nothing. Since Ellizzette did not assert her putative-spouse claim until more than two years after John's death, Shawn maintains, her claim is barred under section 18-12(b).

¶ 34     Article 18 of the Probate Act (755 ILCS 5/art. XVIII (West 2022)) is titled "Claims Against Estates." Relevant here, section 18-12(a) imposes an initial period within which a claim may be filed against an estate but, in any event, section 18-12(b) bars all claims after two years from the decedent's death. 755 ILCS 5/18-12(a), (b) (West 2022); *Topal*, 2022 IL App (4th) 210613, ¶ 17. Thus, a claim that is not filed within section 18-12(b)'s limitations period is barred. *Topal*, 2022 IL App (4th) 210613, ¶ 18; see *Walstad v. Klink*, 2018 IL App (1st) 170070, ¶ 14; *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 596 (2003).

¶ 35     The Probate Act broadly defines a "claim" as "any cause of action." 755 ILCS 5/1-2.05 (West 2022); *In re Estate of Zivin*, 2015 IL App (1st) 150606, ¶ 10. Therefore, the two-year limitations provision applies to any claim regardless of its legal basis. *Rozcyki v. Gitchoff*, 180 Ill. App. 3d 523, 525 (1989) (noting that any claim that might be filed within the contemplation of the

Probate Act, whether based on contract, tort, or otherwise, must be filed within the statutory period and cannot be pursued in a separate proceeding after that period has passed). This strict time frame was enacted by the legislature to facilitate the early settlement of estates. *In re Estate of Parker*, 2011 IL App (1st) 102871, ¶ 57. "Compliance with section 18-12(b) is mandatory, and ' " 'no exception to the filing period may be engrafted by judicial decision.' " ' " *Topal*, 2022 IL App (4th) 210613, ¶ 18 (quoting *Parker*, 2011 IL App (1st) 102871, ¶ 58, quoting *Epsteen*, 339 Ill. App. 3d at 596, quoting *In re Estate of Hoheiser*, 97 Ill. App. 3d 1077, 1081 (1981)).

¶ 36     Turning to the present case, Ellizzette's putative-spouse claim, although raised in a motion, qualifies as a "cause of action" under the Probate Act because it constitutes a factual situation seeking to entitle Ellizzette to a remedy in court. See Black's Law Dictionary (11th ed. 2019) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person"). In turn, it constitutes a "claim" within the meaning of the Probate Act. 755 ILCS 5/1-2.05 (West 2022). Moreover, as we discuss more thoroughly below, Ellizzette's putative-spouse claim is one "against the estate." See *In re Estate of Polly*, 385 Ill. App. 3d 300, 302 (2008) (holding that claims for breach of contract and for an accounting filed by widow seeking 100% of deceased spouse's earnings during the marriage constituted a claim against the estate within the meaning of section 18-12(b) of the Probate Act). Since John died on December 11, 2017, all claims, regardless of their legal basis, were required to be filed within two years after that date, or by December 11, 2019. Ellizzette first raised her putative-spouse claim on November 2, 2022, when she filed her motion to amend objections. Thus, Ellizzette missed the time within which to assert her putative-spouse claim against the estate. As such, the trial court properly determined that Ellizzette's motions, in which she sought to be awarded the entirety of John's estate as his putative spouse, were barred.

¶ 37    Ellizzette insists that section 18-12(b) applies only to claims *against* the estate and that her motions do not constitute claims within the meaning of section 18-12(b). In support of this proposition, Ellizzette first relies on section 18-10 of the Probate Act. According to Ellizzette, section 18-10 "assigns [claims against the estate] priority in classifications that all make clear that 'claims' involve payment of money by the estate to a person or entity, not a distribution of the estate to an heir." She then asserts that the "common thread to all such 'claims' [in section 18-10] is that, if allowed, they reduce the assets of the estate that are available for distribution." Ellizzette reasons that, since the motions seeking to enforce her rights as John's putative spouse and sole heir did not seek to reduce the value of the estate, they are not claims within the meaning of section 18-12(b). Ellizzette's reliance on section 18-10 of the Probate Act is unpersuasive.

¶ 38    Section 18-10 provides that "[a]ll claims against the estate of a decedent are divided into [seven] classes in the manner following": (1) funeral and burial expenses, expenses of administration, statutory custodial claims, and final fees and costs as determined by the court relating to guardianship; (2) the surviving spouse's or child's award; (3) debts due the United States; (4) reasonable and necessary medical, hospital, and nursing home expenses for the care of the decedent during the year immediately preceding death and money due employees of the decedent of not more than $800 for each claimant for services rendered within four months prior to the decedent's death; (5) money and property received or held in trust by the decedent that cannot be identified or traced; (6) debts due Illinois and any county, township, city, town, village, or school district located within Illinois; and (7) all other claims. 755 ILCS 5/18-10 (West 2022). We find nothing in the plain language of section 18-10 to support Ellizzette's twisted reading of the statute. Ellizzette's contention that claims under article XVIII of the Probate Act involve payment of money by the estate to a person or entity, not a distribution of the estate to an heir, is

belied by the language of the statute itself, which expressly refers to an award of a surviving spouse or child of the decedent. Moreover, Ellizzette's motions seek to distribute John's entire estate to her as his sole heir. Thus, as Shawn correctly observes, if successful, Ellizzette's claim *will* reduce the value of the estate.

¶ 39     We also reject Ellizzette's reliance on section 5-3(a) of the Probate Act. That section provides that the trial court "may ascertain and declare the heirship of any decedent to be entered of record in the court at any time during the administration of the estate without further notice or, if there is no grant of administration, upon such notice and in such manner as the court directs." 755 ILCS 5/5-3(a) (West 2022). Section 5-3(a) is not a limitations provision. Rather, it merely allows a court to declare heirship at any point in the administration of an estate. See *In re Estate of Jagodowski*, 2017 IL App (2d) 160723, ¶ 35 (noting that section 5-3(a) grants the court a general power to ascertain heirship). Had Ellizzette raised her putative-spouse claim within two years after John's death, the trial court would have had the authority to amend the heirship order during the remaining period of the administration of the estate. See *In re Estate of Arcicov*, 94 Ill. App. 2d 122, 126 (1968). She did not do so. Hence, Ellizzette's reliance on section 5-3(a) is misplaced. Likewise, Ellizzette's reliance on local court rules is unavailing. While those rules authorize the trial court to make changes, determine "substitute[ ] takers," and correct incomplete or erroneous orders of heirship (Kane County Cir. Ct. Rs. 8.02, 8.03), we read nothing in those rules that modifies the limitations provision in section 18-12(b). Indeed, Ellizzette cites no authority that would allow a local court rule to alter a statute enacted by the legislature.

¶ 40     In short, Ellizzette raised her putative-spouse claim more than two years after John's death. Accordingly, the trial court properly determined that Ellizzette's motions, in which she sought to

be awarded the entirety of John's estate as his putative spouse, were barred by section 18-12(b) of the Probate Act.

¶ 41                              B. Putative-Spouse Claim

¶ 42    Ellizzette also challenges the trial court's finding that she did not have a good-faith belief that she was married to John under the putative-spouse statute. According to Ellizzette, the trial court improperly determined that the record on her status as a putative spouse was "established" by the supreme court in the prior appeal, insofar as the supreme court did not consider or decide her status as John's putative spouse, it did not cite factual findings from a trial or hearing, and its statement of facts inaccurately summarized her deposition testimony and the deposition testimony of Scifo. Ellizzette further contends that, even if the supreme court's "gloss" on the deposition testimony were accepted, it does not show that she did not have a good-faith belief that she was married to John.

¶ 43    Shawn responds that the trial court correctly ruled that Ellizzette could not have believed, in good faith, that she was legally married to John, because the record shows that Ellizzette knew before she participated in a marriage ceremony that the union might not be valid due to John's status as a ward of the court.

¶ 44    At the outset, we note that Ellizzette asserts that the standard of review on this issue is *de novo*. She reasons that the trial court's order determining that she cannot factually meet the good-faith requirement of the putative-spouse statute is the equivalent of a dismissal with prejudice of her putative-spouse claim or a grant of summary judgment in Shawn's favor. She asserts that, to the extent that the court's order is based on the purported record "established" by the supreme court's majority opinion in the underlying case, the order is reviewable under the standards that apply to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)

(governing motions to dismiss that test the legal sufficiency of the complaint)). She further contends that, to the extent that the order relies on matters outside the pleadings, it is reviewable under the standards that apply to section 2-619 of the Code (735 ILCS 5/2-619 (West 2022) (governing motions to dismiss that admit the legal sufficiency of the complaint but assert affirmative matter outside the complaint that defeats the cause of action)). Ellizzette contends that, however characterized, the court's order that she cannot establish the good-faith element of the putative-spouse statute should be reviewed *de novo*. See *Monson v. City of Danville*, 2018 IL 122486, ¶ 12 (applying *de novo* review to trial court's grant of summary judgment); *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006) (noting that dismissals under section 2-615 or 2-619 of the Code are reviewed *de novo*). Shawn does not advocate for any particular standard of review.

¶ 45    We employ a bifurcated standard of review to the trial court's ruling on Ellizzette's motions. We review under the manifest-weight-of-the-evidence standard the trial court's finding that Ellizzette failed to establish a good-faith belief that she was lawfully married to John. See *In re Marriage of Barnard*, 283 Ill. App. 3d 366, 370 (1996) (noting that whether a party has acted in good faith is generally a question of fact).[3] We will not reverse a trial court's factual inquiry unless it is against the manifest weight of the evidence. *Barnard*, 283 Ill. App. 3d at 370. A factual finding is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the trial court's findings appear to be unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44. The manifest-weight

[3]Indeed, *Williams v. Williams*, 97 P.3d 1124, 1128 (Nev. 2004), a case that Ellizzette discusses in her brief, expressly provides that whether a party acted in good faith under the putative-spouse doctrine is a question of fact.

standard applies even if the facts are undisputed, if divergent inferences can be drawn from the undisputed facts. *In re Estate of Koester*, 2012 IL App (4th) 110879, ¶ 45. We review for an abuse of discretion the trial court's ultimate rulings on Ellizzette's motions. See *Bland v. Q-West, Inc.*, 2023 IL App (2d) 210683, ¶ 12 (reviewing for abuse of discretion trial court ruling on motion to amend); *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 80 (same); *People v. McNally*, 2022 IL App (2d) 180270, ¶ 30 (same). An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52. Further, we review the result at which the trial court arrived rather than its reasoning and may affirm on any basis apparent in the record. *People v. Johnson*, 208 Ill. 2d 118, 128 (2003) ("It is a fundamental principle of appellate law that when an appeal is taken from a judgment of a lower court, '[t]he question before [the] reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached.' " (quoting *People v. Novak*, 163 Ill. 2d 93, 101 (1994))); *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023, ¶ 49. We conclude that, even if Ellizzette's putative-spouse claim had been timely, the trial court did not err in determining that she did not have a good-faith belief that she was lawfully married to John.[4]

¶ 46    The Illinois putative-spouse statute—section 305 of the Marriage Act—provides in relevant part as follows:

---

[4]Although we employ the bifurcated standard of review discussed above, the result we reach would be the same under the *de novo* standard of review advocated by Ellizzette.

"Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse until knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. A putative spouse acquires the rights conferred upon a legal spouse, including the right to maintenance following termination of his status, whether or not the marriage is prohibited, under Section 212 [of the Marriage Act (750 ILCS 5/212 (West 2022))], or declared invalid, under section 301 [of the Marriage Act (750 ILCS 5/301 (West 2022))]." 750 ILCS 5/305 (West 2022).

Thus, the rights of a putative spouse are conferred upon anyone who has gone through a marriage ceremony and cohabited with another in the good-faith belief that he or she was married to the other individual. See *Daniels v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 106 Ill. App. 3d 412, 416 (1982). In this case, the trial court determined that Ellizzette did not have a good-faith belief that she was married to John. Ellizzette disputes this finding.

¶ 47    While several Illinois cases discuss section 305 of the Marriage Act (see, *e.g.*, *In re Estate of Hall*, 302 Ill. App. 3d 829, 835 (1998); *In re Marriage of May*, 286 Ill. App. 3d 1060, 1064 (1997); *Daniels*, 106 Ill. App. 3d at 416), our research has not located any Illinois case that has conducted a detailed examination of "good-faith belief" in the context of the putative-spouse doctrine. As Ellizzette observes, however, other states' courts have considered the matter. Those cases establish that "good faith" for the purpose of determining whether a person qualifies as a putative spouse means an honest and reasonable belief that the marriage is valid at the time of the ceremony and that there is no legal impediment to the marriage. See, *e.g.*, *Williams*, 97 P.3d at 1128; *Hicklin v. Hicklin*, 509 N.W.2d 627, 631 (Neb. 1994); *In re Succession of Gordon*, 461 So.2d 357, 362 (La. Ct. App. 1984); see also *Ceja v. Rudolph & Sletten, Inc.*, 302 P.3d 211, 213 (Cal.

2013) (holding that "good faith" in the context of the putative-spouse doctrine means "a genuine and honest belief in the validity of the marriage"). The *Williams* court elaborated:

"Good faith is presumed. The party asserting lack of good faith has the burden of proving bad faith. Whether the party acted in good faith is a question of fact. Unconfirmed rumors or mere suspicions of a legal impediment do not vitiate good faith ' "so long as no certain or authoritative knowledge of some legal impediment comes to him or her." ' However, when a person receives reliable information that an impediment exists, the individual cannot ignore the information, but instead has a duty to investigate further. Persons cannot act ' "blindly or without reasonable precaution." ' " *Williams*, 97 P.3d at 1128.

¶ 48    Ellizzette argues that an application of the standards set forth in *Williams* "require[s] that Shawn show [she] had received certain and authoritative information in 2017 of the 'legal impediment' to a valid marriage: that her marriage to John would not be 'legal' unless *Shawn* first fully complied with all requirements of section 11a-17(a-10) [of the Probate Act]." (Emphasis in original.) Ellizzette argues that no such showing can be made.

¶ 49    We conclude that the trial court did not err in concluding that Ellizzette did not have a good-faith belief that she was married to John. Regardless how the Illinois Supreme Court characterized her deposition testimony and the deposition testimony of Scifo, those deposition transcripts establish the following. Ellizzette knew, prior to the marriage, that John had been declared a ward of the court. Ellizzette knew that a guardian (Shawn) had been appointed for John. Ellizzette knew that an attorney (Scifo) had been appointed to represent John in the guardianship proceedings. Scifo provided both John *and* Ellizzette with information that a potential impediment to a marriage existed. Notably, Scifo stated that he discussed the validity of a marriage with John and Ellizzette, telling them "they shouldn't get married because there was a guardianship action

that had been imposed" and "the marriage could be voided by Shawn McDonald because he was the plenary guardian of John." Scifo further testified that, in response to Ellizzette's questions to him about marriage, "[his] statements *** were always [that John] was under [a] guardianship and [he (Scifo)] advised against [marriage] because Shawn would probably have the ability to void the marriage *** as the plenary guardian." Although Scifo testified that these conversations took place after the date of the marriage (but before he knew of the marriage), Ellizzette acknowledged in her deposition testimony that Scifo had "cautioned" John, prior to their wedding ceremony, "that they may try to invalidate the marriage." This deposition testimony establishes that Ellizzette possessed "authoritative knowledge of some legal impediment" to the marriage, *i.e.*, that the marriage might be invalid due to John's status as a ward. That Scifo did not represent Ellizzette is of no consequence. Scifo was an attorney appointed to represent John in his guardianship proceedings and Ellizzette questioned Scifo about marriage. Based on this record, we cannot say that the trial court's finding that Ellizzette did not have a good-faith belief that she was married to John was against the manifest weight of the evidence. Thus, even if we were inclined to adopt the standards set forth in *Williams*, Ellizzette's argument would fail.

¶ 50    Ellizzette raises three additional arguments that we will briefly address. First, Ellizzette contends that, as a nonlawyer, she could not have reasonably reached the conclusion that her marriage would not be "legal" unless the requirements of section 11a-17(a-10) were complied with. In support of this contention, she invokes this court's statement in *McDonald* that nothing in the language of section 11a-17(a-10) of the Probate Act expressly declares that a marriage entered into by a ward is void in the absence of a best-interest hearing (*In re Estate of McDonald*, 2021 IL App (2d) 191113, ¶ 103) and noting that the dissenting justices in *McDonald* reached the same conclusion (*In re Estate of McDonald*, 2022 IL 126956, ¶¶ 108-112 (Theis, J., concurring in part

and dissenting in part, joined by Overstreet and Carter, JJ.)). Next, Ellizzette asserts that Scifo never stated that the marriage "would definitely be void." Instead, he testified that the marriage " 'could be voided,' " and "would be voidable" under an unspecified provision of the Marriage Act, and she concludes that an attorney's "flawed advice cannot provide notice, as a matter of law, that precludes establishing good faith under the putative spouse statute." Finally, Ellizzette asserts that Scifo never testified that he advised John or Ellizzette (or anyone else) that the couple's marriage would be void unless the court conducted a best-interest hearing on Shawn's petition, found by clear and convincing evidence that the marriage was in John's best interest, issued an order approving the marriage, and directed Shawn to execute a marriage license and other marriage documents.

¶ 51    These arguments all fail because that is not what the standards set forth in *Williams* require. Rather, those standards provide that, when an individual receives reliable information that an impediment exists, he or she cannot ignore that information. *Williams*, 97 P.3d at 1128. Notably, here, Ellizzette received information from an attorney, John's independent counsel, that she and John should not marry because of John's status as a ward. Ellizzette rejected his advice, while referencing the law in other jurisdictions and countering that the couple "could get married" and it "wouldn't be an issue." At that point, she had reliable information of a legal impediment to the marriage. In the language of *Williams*, "the individual cannot ignore the information" or "act ' "blindly or without reasonable precaution." ' " *Williams*, 97 P.3d at 1128.

¶ 52    In short, based on the standards in *Williams*, standards for which Ellizzette advocates, we conclude that the trial court's finding that Ellizzette did not establish a good-faith belief that she was married to John was not against the manifest weight of the evidence. The evidence of record shows that Ellizzette was provided with reliable information from an attorney representing John

that the marriage could be declared invalid because of John's status as a ward and that therefore she should have known that there was a legal impediment to the marriage. As such, the trial court did not abuse its discretion in denying Ellizzette's motions.

¶ 53                    III. CONCLUSION

¶ 54    For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 55    Affirmed.

*In re Estate of McDonald*, **2024 IL App (2d) 230195**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 17-P-744; the Hon. Robert K. Villa, Judge, presiding. |
| **Attorneys for Appellant:** | Steven J. Roeder and Ryan P. Weitendorf, of Roeder Law Offices LLC, of Chicago, and Robert G. Black, of Law Offices of Robert G. Black, P.C., of Naperville, for appellant. |
| **Attorneys for Appellee:** | Peter M. Storm, of Storm & Piscopo, P.C., of Geneva, and Paul G. Krentz, of Kinnally Flaherty Krentz Loran Hodge & Masur PC, of Aurora, for appellee. |